[Civ. No. 4247. Second Appellate District, Division One.—January 17, 1925.]

MURIEL B. LARKEY, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

[1] HIGHWAYS — DEDICATION—ADVERSE POSSESSION.—Where land has been dedicated to the public as an alley, as against the public no title thereto can be acquired by adverse possession.

[2] ID.—OFFER OF DEDICATION—RECORDATION OF MAP—SALE OF LOTS. The mere filing of a map of record, designating certain portions of a tract as streets and alleys, is simply an offer to dedicate the spaces designated on said map as streets and alleys to the public for highway purposes; but when the owner, after recording such a map, sells lots designated thereon by reference to said recorded map, he thereby irrevocably dedicates the streets and alleys shown thereon to the use of the public.

[3] ID.—DIVERSION FROM USE — ABANDONMENT — SUBSEQUENT APPROPRIATION.—In such case, the property dedicated becomes public property, impressed with the use for which it was dedicated, and the public cannot divert it from that use, and it cannot be lost by adverse possession, nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart, and the failure to make use of the land does not authorize the owner to resume possession, but the public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest.

[4] ID. — SALE OF LAND ADJACENT TO ALLEY — INTERVENING STRIP— ESTOPPEL.—Where the original owners of a tract of land file a map of record, designating certain portions of the tract as streets and alleys, and then sell a lot adjacent to one of the designated alleys, such original owners will be estopped from claiming that they are the owners of any land between said lot and said alley; and this is true even if the effect of so holding will be to extend the width of said alley beyond the apparent width thereof as shown on the recorded map.

[5] ID. — WIDTH OF ALLEY — CONFLICT — CONSTRUCTION AGAINST OWNERS.—Where the figures "10" appear on a recorded map within the lines indicating a certain alley and near the easterly end thereof, but such alley is actually sixteen feet in width,

2. What amounts to dedication of highway, notes, 57 Am. St. Rep. 749. See, also, 9 Cal. Jur. 36.

3. See 9 Cal. Jur. 82.

4. Dedication by maps and plats, notes, 10 Am. St. Rep. 189; Ann. Cas. 1916D, 1079. See, also, 8 R. C. L. 895.

5. See 8 R. C. L. 896; 9 Cal. Jur. 40.

measured between the lots on the north side of said alley and those on the south side, all of which lots were sold by reference to said recorded map and were shown thereon as being adjacent to said alley, such conflict will be construed most strongly against the original owners who filed such map of record.

[6] ID.—INTERVENING STRIP—ADVERSE POSSESSION.—In such case, the original owners having parted with all their right to the intervening six-foot strip of land when they filed said map of record and then sold lots bordering on the alley in question, they had no interest in such six-foot strip for the purchaser of an adjacent lot to acquire by adverse possession as against them; and said purchaser could not acquire any interest in said strip by adverse possession as against the public.

[7] ID.—INTENT OF ORIGINAL OWNERS — EVIDENCE. — In an action by the purchaser of one of said lots to quiet title thereto and to said adjacent six-foot strip, based upon the adverse possession thereof for the statutory period, evidence showing that the original owners intended to and did actually dedicate an alley sixteen feet in width is both material and competent.

(1) 2 C. J., p. 222, n. 98; 18 C. J., p. 121, n. 74.    (2) 2 C. J., p. 222, n. 98; 18 C. J., p. 58, n. 14, p. 119, n. 52.    (3) 2 C. J., p. 222, n. 98; 18 C. J., p. 58, n. 14, p. 75, n. 7, p. 120, n. 55, p. 127, n. 68.    (4) 18 C. J., p. 58, n. 14.    (5) 18 C. J., p. 110, n. 10.    (6) 2 C. J., p. 222, n. 98.    (7) 18 C. J., p. 133, n. 88 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

The facts are stated in the opinion of the court.

Jess E. Stephens, City Attorney, and Lucius P. Green, Assistant City Attorney, for Appellant.

F. A. Waters and Newby & Palmer for Respondent.

CURTIS, J.—This action was instituted to quiet title to lot 22 of block 21 of the Arlington Heights Tract, according to the official map of said tract of record in the office of the county recorder of the county of Los Angeles, and to a strip of land six feet in width and 142 feet in length, lying immediately north of and parallel to said lot 22. The defendant, the city of Los Angeles, concedes that plaintiff is the owner of said lot 22, but asserts that said six-foot strip is part of a public alley and that defendant has an easement in and over the same for highway purposes.

On May 19, 1887, and for some time prior thereto T. Weisendanger and others were the owners of a tract of land lying westerly of the city of Los Angeles, which they subdivided into lots and blocks under the name of the Arlington Heights Tract. They made a map of this tract and filed the same of record in the office of the county of Los Angeles, being the county in which the land was situated. This tract was bounded on the north by Washington Street and blocks 20, 21, and 22 of said tract front on said street. Block 20, the most easterly of the three blocks, is bounded on the east by First Avenue, now known as Arlington Avenue. Block 21 lies just west of block 20 and the two are separated from each other by Second Avenue; and block 22, the most westerly of the three blocks, is separated from block 21 by Third Avenue. Each of these blocks consist of twenty-two lots. Lots numbered 1 to 6, inclusive, in each block face on Washington Street and extend south to an alley running east and west through said tract, and are 50 feet in width and 200 feet in depth. The remaining sixteen lots in each block lie south of the alley. They consisted of two tiers of eight lots each, one tier of lots facing east and the other tier of lots facing west. These lots are 50 feet in width and 142 feet in depth. Through the center of each of the blocks 20 and 21 an alley extends from the south boundary line of said blocks, northerly to the east and west alley above mentioned. One of these alleys is 16 feet in width, and is so indicated on the recorded map. The other appears to be designated on the map as 10 feet in width. The alley running east and west is indicated on the map as 10 feet in width, although by actual measurements made on the ground the distance between the lots on the north side of said alley and those on the south side thereof is 16 feet. On the north side of this alley and just opposite to said lot 22, belonging to plaintiff, are three lots, being lots numbered 1, 2, and 3 in said block 21. These three lots face on Washington Street and abut on said alley. Lots 1 and 2 in said block 21 were sold by the original owners of said tract on August 8, 1888, to Warren P. Love, and on December 10th of the same year they sold said lot 3 to Nannie E. Todd. It does not appear when lot 22 of said block was sold by the original owners of the tract. About the first we learn of this lot is in the year 1908, at which time it was owned by one Roseen. In this year Roseen built a fence along what he claimed to be the

north boundary line of this lot. This fence extended in an easterly and westerly direction and was parallel to, and 56 feet north of, the south boundary line of said lot. In 1914, plaintiff purchased said lot 22, and at this time the fence constructed by Roseen was still standing, and plaintiff continued to occupy the land inclosed by said fence and claimed to own the whole thereof up to the time of the commencement of this action, and during this time plaintiff has paid all the taxes that have been assessed against said lot 22. It does not appear that any taxes were ever assessed against said six-foot strip, unless it can be said that taxes were assessed against it as a part of said lot 22. The lot of plaintiff lies just south of the alley running east and west through said tract, and faces east on Second Avenue. Since the filing of said map, and some years prior to the commencement of this action, said tract was annexed to and became a part of the city of Los Angeles.

The court found that plaintiff had acquired title by adverse possession to that portion of said six-foot strip lying north of and adjacent to her said lot 22. There is no direct finding as to whether this six-foot strip was a part of the alley, or whether it had ever been dedicated to the public. [1] It is conceded, however, that if it had ever been dedicated to the public as an alley, that as against the public no title thereto could be acquired by adverse possession. This is undoubtedly the law. (*Orena* v. *City of Santa Barbara,* 91 Cal. 621, 631 [28 Pac. 268].) If, therefore, this six-foot strip had ever been dedicated to the public as a part of the alley, then the finding of the court that plaintiff is the owner thereof cannot stand. We might first determine when the act resulted in the dedication of the alley, independent of its width, and whether it be 10 or 16 feet, actually took place. [2] The mere filing of the map of record, designating certain portions of the tract as streets and alleys, is simply an offer to dedicate the spaces designated on said map as streets and alleys to the public for highway purposes. (*Elliott* v. *McIntosh,* 41 Cal. App. 763, 766 [183 Pac. 692].) But when the owner, after recording such a map, sells lots designated thereon by reference to said recorded map, he thereby irrevocably dedicates the streets and alleys shown thereon to the use of the public. (*San Leandro* v. *Le Breton,* 72 Cal. 170 [13 Pac. 405]; *Archer* v. *Salinas City,* 93 Cal. 43 [16 L. R. A. 145, 28 Pac. 839]; *Davidow* v. *Griswold,*

23 Cal. App. 188 [137 Pac. 619]; *Daly City* v. *Holbrook,* 39 Cal. App. 326 [178 Pac. 725]; *Elliott* v. *McIntosh,* 41 Cal. App. 763 [183 Pac. 692]; *Berton* v. *All Persons, etc.,* 176 Cal. 610 [170 Pac. 151].)   Therefore, when the original owners of the Arlington Heights Tract filed for record the map of this tract and sold said lots in said tract according to said map, the streets and alleys designated thereon became dedicated to the public, and no further action was necessary either upon the part of the public authorities, or upon the public in the use of said streets and alleys in order to constitute the streets and alleys of said tract public highways.   As we have already seen, said map was filed for record on May 19, 1887, and three of the lots of said tract abutting on said alleys and lying immediately opposite to and to the north of plaintiff's said lot 22 were sold by the original owner by the tenth day of December, 1888. Accordingly said alley became irrevocably dedicated as a public alley on December 10, 1888.   Therefore, no title to any portion of said alley could be acquired by plaintiff or her predecessors in interest by adverse possession subsequent to said last-named date.   As was said by the court in a similar case,   [3]   ''The property dedicated has become public property, impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession.   Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart.   Such failure to make use of the land does not authorize the owner to resume possession. The public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest.''   (*Davidow* v. *Griswold, supra.*)

This brings us to the real question in the case, and that is, the width of the alley running easterly and westerly through said tract, which the original owners set apart or dedicated to the public for highway purposes.   If this alley is only 10 feet in width, and must be measured from the south line of the adjacent lots, then this disputed strip of six feet is no part of it and plaintiff is undoubtedly the owner thereof.   On the other hand, if the alley is 16 feet in width, then it includes this disputed strip, and the defendant has an easement thereon as claimed by it in its answer.   As we have before stated, the figures ''10'' appear on the map within the lines indicating this alley and

near the easterly end thereof. Figures placed like these on the alleys, streets, and lots shown on the map undoubtedly were so placed thereon for the purpose of showing the dimensions of the different pieces of land embraced within the tract, and shown on the map. These figures "10" appearing on the map are unquestionably intended to indicate that this alley is ten feet in width. If this were the only fact shown by the map regarding the width of the alley, there would be no question of the correctness of plaintiff's claim as to its width. There is, however, another fact shown on the map which we think must be given consideration. This fact is the location of the said alley between two sets of lots. The map shows that the lots facing on Washington Street are separated from those to the south by this alley, and that this alley extends the entire distance from the southern boundary line of the Washington Street lots to the northern boundary line of those lots situated to the south. This would indicate that the width of the alley was the distance between the lots facing on Washington Street and those to the south, which by actual measurement is shown to be sixteen feet. Which of these two features shown on the map are to control in this case? It is evident that they both cannot stand as they are in direct conflict with each other. According to the plaintiff's contention, the original owners set apart only ten feet for this alley and that in so doing they left a strip six feet in width just south of the alley and running the entire width of the block. This strip of land plaintiff contends lies between the ten-foot alley, as claimed by her, and her lot and those of other owners similarly situated on the south. Just why this six-foot strip should be located south of this supposed ten-foot alley and not north of it, plaintiff has not explained. It appears to us that the same argument used by plaintiff for locating it adjacent to her lot could with equal force be used by the owners of the lots north of the alley to locate it contiguous to their lots. But, accepting plaintiff's contention as to its location, we are faced with this condition: The original locators have filed a map and sold to plaintiff or her predecessor a lot which this map shows is adjacent to an alley. It appears, however, upon a survey of the premises that this lot, according to plaintiff's contention, does not border upon said alley, but that there is a strip of land six feet in width between this lot and the said alley, which the original owners

(we will suppose) claim was neither a part of said lot nor of said alley, but that it belongs to them, and they proceed to occupy the same and to exclude the owner of said lot from any right to pass therefrom on to said alley. Could any such claim of the original owners be maintained? We think not. **[4]** Having sold to plaintiff, or her predecessor, a lot adjacent to an alley, we think the original owners would be estopped from claiming that they were the owners of any land between said lot and said alley, and that when they filed for record a map and sold lots according thereto, which map showed that the lots were bounded by streets and alleys, that they would be bound by said map. This we think would be true even if, by so holding, the width of certain of the streets or alleys were extended beyond the apparent width shown on the map. **[5]** The original owners, having filed the map, are bound thereby and all doubts as to the meaning of the map, and any conflict appearing upon its face, are to be construed most strongly against them. (18 Cor. Jur. 110; *Maher* v. *Brown*, 183 Ill. 575 [56 N. E. 181, 186]; *Florida East Coast Ry. Co.* v. *Worley*, 49 Fla. 297 [38 South. 618, 622].) **[6]** Plaintiff stands in this action in no better position than the original owners would in an action brought by them to recover this strip of land prior to the running of the statute of limitations against them. Plaintiff has by adverse possession succeeded to only such rights in this strip of land as were held by the original owners after they had parted with their title to the lots bordering on this alley. The original owners having parted with all their rights in this strip of land when they filed for record the map and sold lots bordering on this alley, there was nothing for the plaintiff to acquire by adverse possession as against them. The finding, therefore, of the court that the plaintiff had acquired title to that portion of said six-foot strip lying adjacent and north of said lot 22 in our opinion finds no support in the evidence.

**[7]** There was other evidence in the case which we have not heretofore referred to. We have arrived at the above conclusion independent of this evidence. Nevertheless, we think it was both material and competent, and that it affords an additional ground in support of appellant's contention that the original owners intended and did actually dedicate an easterly and westerly alley 16 feet in width. This evi-

70 Cal. App.—**41**

dence was that of the civil engineer who made the original survey of the Arlington Heights Tract and subdivided the tract into lots, blocks, etc. He stated at the trial that the alley in question, as originally surveyed and laid out, was 16 feet in width; that he made the original plat or map of the tract which designated said alley on said plat as 16 feet in width. This original map, however, was not produced at the trial and there was evidence that it had been lost. At the time this map was filed for record in the office of the county recorder, the law did not require, as it does now, that the original map should remain on file in said office. On the other hand, the law then in force required the recorder to make a copy of the map filed and to return the original to the owner. This witness further testified that this and all other alleys in the tract were, at the time of the survey of said tract, staked out on the ground as 16 feet in width. No attempt was made to dispute this testimony. The evidence in the case further shows that all of the owners of lots bordering upon any of the alleys in said tract, where improvements have been made contiguous to any of said alleys, have erected their buildings, fences, and other structures so as to allow 16 feet for the width of said alleys, with the single exception of the plaintiff. As stated above, while we have not based our opinion upon this evidence, we consider it of material importance in the case.

There is a further finding of the court upon which plaintiff relies for an affirmance of the judgment rendered herein. By this finding the court found that "the whole of the land as described in said complaint lies within the city of Los Angeles and is described as Lot 22 of Block 21 of said Arlington Heights Tract, and has a width of 56 feet." We seriously question whether this finding can either be harmonized with the pleadings in the case or sustained by the evidence. By the complaint, plaintiff claims to be the owner of said lot 22 "and a parcel of land six feet in width and 142 feet in length lying parallel with, adjacent to and contiguous with, and northerly of the northerly line of said Lot 22; the northerly line of said six-foot strip being also parallel with and uniformly distant 210 feet southerly from the southerly line of Washington street." From this description of the property in dispute, given in the complaint, it is plain that the six-foot strip is not claimed to be a

part of said lot 22, but that it lies parallel with, adjacent to, and northerly of the north line of said lot 22. Futhermore, the map of said tract shows that said lot 22 and every other lot in said tract is 50 feet in width, and there was no evidence in the case which conflicts in any manner with the map in this respect.

For the reasons stated herein, we are of the opinion that the judgment should be reversed, and it is so ordered.

Conrey, P. J., concurred.

Houser, J., being disqualified, took no part in the above decision.