[Civ. No. 10088.   Third Dist.   Sept. 25, 1961.]

ELIZABETH B. RICHARDS, Appellant, v. COUNTY OF
COLUSA et al., Respondents.

Elizabeth B. Richards, in pro. per., for Appellant.

Harold Wilsey, Jr., District Attorney, William L. Fisher, Deputy District Attorney, and Downey, Brand, Seymour & Rohwer for Respondents.

WARNE, J. pro tem.*—Plaintiff brought this action to quiet title to a strip of land approximately 38 feet in width located immediately to the west of the center line of "B" Street and extending from Main Street northerly to the Sacramento River, and between Blocks 2 and 3 of Goad's Extension to the City of Colusa.

Defendant Sacramento River West Side Levee District answered the complaint denying plaintiff's allegations of ownership of the land described in the complaint and as a separate and affirmative defense alleged ownership in fee simple of a portion of the said lands.

Defendant county of Colusa answered the complaint, denying plaintiff's allegations of ownership of the land described in the complaint, and as a separate and affirmative defense alleged the said property is subject to an easement for road purposes; and also cross-complained, seeking to quiet title in fee to a major portion of the strip of land claimed by plaintiff.

Judgment was entered in favor of the defendants and plaintiff appeals.

The record shows that on May 10, 1870, there was filed in the office of the County Recorder of the County of Colusa a certain map entitled "Plat of Goad's Extension." This map has reference to an area which attached to the easterly boundary of the city of Colusa and subdivided an area three blocks in an easterly direction and ten blocks in a northerly-southerly direction. The area extends from the Sacramento River, on the north, southerly to a line which would be an easterly extension of the northerly boundary of Carson Street in the city of Colusa. This map does not have a scale or measurement. The size of the blocks, width of streets, surveyor's markings as to course and distances, and points from which measurement could be taken are not indicated on the map in any way. The map provides for streets and alleys and,

while there are no dimensions shown on the map, all transactions concerning this subdivision since 1870 have presupposed the lots, blocks and streets to conform to the size of the corresponding lots, blocks and streets in the city of Colusa. However there were no surveyor's markings to indicate the boundary lines upon the land itself.

The record further shows that for a time prior to 1901 there existed a bridge across the Sacramento River with a southerly approach in the approximate location of "B" Street. This site for a river crossing was changed and the bridge and approach moved upstream in 1901. There is nothing in the record to show the exact location of the old bridge approach, nor is there any evidence of the acquisition by the county of Colusa of property, other than that designated as "B" Street, for the use as an approach to the old bridge.

The record is silent as to the use of "B" Street as a road or street from 1901, when the bridge was abandoned, until 1917. There is, however, no evidence in the record that the county of Colusa ever abandoned any easement for road purposes that it might have acquired on the westerly half of "B" Street between Blocks 2 and 3 of Goad's Extension. However any interest held by the county in the easterly one-half of "B" Street was abandoned in 1959.

It is admitted by all parties that in 1915 plaintiff's predecessors in interest acquired title to Block 2 of Goad's Extension and that in 1917 defendant Sacramento River West Side Levee District acquired title to Block 3 of Goad's Extension, which is contiguous to Block 2. Plaintiff testified that the now-existing fence between the properties was in existence when she moved on the premises in 1917, and that she and her family have used the property east of the fence since that time. This fence was constructed 1.76 feet east of the west boundary of "B" Street and parallels it for a distance of 276.72 feet. The evidence is also uncontroverted that plaintiff openly used the property to the fence, planted walnut trees along it, and erected buildings, and that until 1958 the fence was recognized as a boundary between the parties. It is also uncontradicted that the boundary was uncertain and that the deeds on both sides merely referred to the plat of Goad's Extension which, as hereinabove indicated, failed to contain notations as to the size of parcels in the subdivision or any reference to monuments.

The Sacramento River West Side Levee District held record

title to all of Block 3 of Goad's Extension from the date of acquisition until December 13, 1950, when it conveyed a portion of the property to Colusa Post 59 of the American Legion by a deed containing a metes and bounds description which described all of Block 3 except the portion used for levee purposes by the Sacramento River Levee District and the westerly one-half of "B" Street. By deed dated August 19, 1953, the American Legion conveyed this same property to the defendant county of Colusa. On January 9, 1959, additional deeds from the levee district to the American Legion and from the American Legion to the county of Colusa were executed and recorded for the stated purpose of correcting the former deeds and these latter deeds included the westerly one-half of "B" Street.

The facts as indicated clearly show a dedication of "B" Street for road and street purposes. The filing of the plat (plat of Goad's Extension), designating certain portions of the tract as streets and alleys, was merely an offer to dedicate to the public for highway purposes the space designated on the map as streets and alleys. However, when the owner, after recording the map, sold lots designated by reference to the recorded map, as was done in the instant case, he thereby irrevocably dedicated to the use of the public the streets and alleys shown thereon. (*Larkey* v. *City of Los Angeles,* 70 Cal.App. 635 [233 P. 991].) Further, the evidence in relation to the "old bridge" approach supports the inference that the county of Colusa accepted the dedication of "B" Street for road purposes. Ordinarily, under the principles of common-law dedication the public takes nothing but an easement for a public use, the title to the underlying fee remaining in the original owner and passing to the successors in ownership of the abutting land. (15 Cal.Jur.2d § 56, p. 344.) Under that principle of law all that the county of Colusa obtained by the dedication and acceptance was an easement for road and street purposes. The underlying fee remained in the original owner and passed to his successors.

Plaintiff for the first time on this appeal contends that as a matter of law the undisputed evidence establishes that she has title to the disputed strip of land by reason of adverse possession. The general rule is that on appeal a change of theory is permitted only when all the facts pertinent to the new theory are in the record. (*Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534].) The record shows that the case at bar was tried upon the theory that there was an

implied agreement as to the boundary by acquiescence. The new theory of adverse possession "contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial. . . ." (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738].) Hence, this contention comes within the general rule holding that questions raised for the first time on appeal will not be considered. (*MacKenzie* v. *Angle,* 82 Cal.App.2d 254 [186 P.2d 30]; *Damiani* v. *Albert,* 48 Cal.2d 15 [306 P.2d 780].)

The evidence shows that plaintiff and the Sacramento River West Side Levee District were adjacent landowners from 1917 until 1950 and that the fence separating these two properties was in existence in 1915 when plaintiff's predecessor purchased the property. The evidence is also uncontradicted that plaintiff openly used the property to the fence and, as we have hereinbefore indicated, planted walnut trees and erected buildings. Until 1958 the fence was used as a boundary between the parties. Furthermore, there was uncontradicted testimony that the boundary was uncertain in that there were no monuments and that the deeds on both sides referred to the plat (plat of Goad's Extension) which failed to contain notations on the size of the parcels in the subdivision, and also that subsequent deeds from the district utilizing metes and bounds originally only conveyed property to the fence. Thus the evidence is such that if both owners were private persons the only result would be that the long-continued acquiescence in and recognition of the fence as the correct boundary line would be conclusive of an implied agreement on the location of the boundary. Here there was uncertainty, or belief of uncertainty, in the location of the boundary line; there was an implied agreement fixing the line; and there was an actual designation of the line by the fence on the ground and occupation in accordance therewith. (*York* v. *Horn,* 154 Cal.App.2d 209 [315 P.2d 912]; see also vol. 2, Tiffany on Real Property, § 654, ch. 11, and cases cited.)

The result should be no different because the Sacramento River West Side Levee District was the "co-terminus owner," at least inasmuch as its ownership continued from 1917 to 1935. In *Muchenberger* v. *City of Santa Monica,* 206 Cal. 635 [275 P. 803], the court held that a public agency might expressly agree as to the location of a boundary line. We see no reason why an implied agreement made prior to 1935, the

effective date of the amendment to section 1007 of the Civil Code, should not also bind a public agency.

Respondents contend that section 1007 of the Civil Code, which exempts certain governmental property from the general rules regarding adverse possession, would be thwarted if implied boundary line agreements with a public agency were allowed. We need not decide this question, as prior to 1935 all governmental property was not exempt from adverse possession. Prior to 1935 the only apparent exception was where the public agency acquired an inalienable interest, such as lands held in trust for the general public, upon a dedication to the public for use such as a street, park or for a public building. (*Ames* v. *City of San Diego,* 101 Cal. 390 [35 P. 1005].) Here the district's interest in the land which it conveyed was alienable. At least as of 1935 the Sacramento River West Side Levee District's interest included solely the property west of the fence. Subsequent conveyances transferred nothing more. Therefore, the county never acquired a fee interest in the property in dispute, although it retained an easement over that portion of plaintiff's property. The county's easement for road purposes was not the subject of an implied agreement as this interest was inalienable and it cannot be said that the county in any way agreed to abandon the right of way.

It was stipulated at the trial that the district held an easement for levee purposes along the south bank of the Sacramento River over plaintiff's property. We therefore conclude that plaintiff owns in fee the property described in her complaint, subject to the levee easement and an easement vested in the county of Colusa over the western half of ''B'' Street.

The judgment is reversed and the trial court is directed to enter judgment in accordance with this court's conclusions as herein stated.

Van Dyke, P. J., and Schottky, J., concurred.