[Civ. No. 45329. Second Dist., Div. Five. July 31, 1975.]

LUA THURMOND SAFWENBERG, as Executrix, etc.,
Plaintiff and Appellant, v.
ELIAZ LOZA MARQUEZ et al.,
Defendants and Appellants.

**COUNSEL**

Brelsford, McMahon, Butcher & Loberg and Dennis D. Butcher for Defendants and Appellants.

Brazelton, Clifford, Smith & Oksner and Jay Donald Smith for Plaintiff and Appellant.

## OPINION

**LORING, J.*** —Lua Thurmond Safwenberg (Safwenberg), plaintiff, respondent and cross-appellant, brought an action as executrix of the estate of Alice Thurmond (her mother) to quiet title to a portion of an abandoned street (Ash Street) in the City of Carpenteria, Santa Barbara County. She claimed the abandoned street belonged to the estate. Eliaz Marquez and Albert Sanchez (Marquez and Sanchez), defendants, appellants and cross-respondents each owns a lot adjacent to the abandoned street purchased from Safwenberg's predecessors and each claims title to the center of the street. The case was submitted to the court below on an agreed pretrial statement. The trial court determined that the land belonged to the Thurmond estate. Marquez and Sanchez appeal. The trial court also held that Safwenberg could not establish adverse possession rights by merely paying taxes and she appeals from this portion of the judgment.

### STATEMENT OF FACTS[1]

Safwenberg's mother, Alice Thurmond, and Alice's husband, Frank Thurmond, originally owned several parcels of real property in Carpenteria. Pursuant to a divorce agreement in 1937, they divided their property. Alice received Lot 9 (adjacent to Ash Street) and a large parcel containing lots adjoining Lot 9 to the north. Frank received Lots 7 (adjacent to Ash Street) and 8.

In 1938, the County of Santa Barbara abandoned Ash Street. In 1941, Alice sold Lot 9 to Sanchez and Frank sold Lot 7 to Marquez's predecessors, also named Marquez, by deeds describing the land by block and lot number only with reference to the recorded map. Both Alice and Frank told the purchasers that no interest in the streets was conveyed. Alice stated that she needed the portion as a means of access to her nearby land. Alice also told Sanchez that the width of his lot was 50 feet (the width if the street is excluded).

Both Sanchez and Marquez conducted themselves as if they did not own the street area. Sanchez planted a vegetable garden in part of the

---

*Assigned by the Chairman of the Judicial Council.

[1]The appeal is submitted to us on an agreed statement. An area map appears as an appendix at page 313 *infra*. This map has been reproduced from appellant's opening brief. For clarity we have added thereto the words (and arrows) "disputed area" and "Safwenberg property." Pursuant to our request for clarification, the parties have stipulated here that the word "abandoned" never did appear on the recorded map.

area, but only after asking Alice Thurmond's permission. Sanchez fenced off his land from the street area; he never paid taxes on the street area. Marquez also never paid taxes on the land and in 1960, he offered to buy the disputed area. He obtained permission for any use that he made of the land. Since 1938, the taxes have been separately assessed to and paid by Alice Thurmond or her estate.

The trial judge held that the conveyance to Marquez and Sanchez did not, as a matter of law, include an interest in one-half the adjacent abandoned street. Secondly, the trial judge also found an ambiguity in the map which was incorporated by the deed and admitted parol evidence to determine the meaning of the deed. Finally, the trial judge found that Thurmond had not established title by adverse possession.

## CONTENTIONS

Marquez and Sanchez contend that the deeds conveyed a portion of the adjacent abandoned street and that the trial judge erred in admitting extrinsic evidence.

Safwenberg contends that if the trial court's judgment is reversed, she should be given the opportunity to establish her title to the property by adverse possession.

## DISCUSSION

Marquez and Sanchez contend that as a matter of law, the deeds to their property conveyed one-half of the adjacent abandoned street in fee and that extrinsic evidence on the intent of the parties should have been excluded. The grant deeds through which Sanchez and Marquez received their property described the property only by the lot and block number, "according to the Map thereof recorded in" Santa Barbara County. No metes and bounds description was included in the deed.

California Civil Code section 1112 states: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears *from the grant.*" (Italics ours.) The intent of the parties, as stated in the grant, was to convey the lot in a certain block.

In *Anderson* v. *Citizens Sav. etc. Co.,* 185 Cal. 386 [197 P. 113], the facts were somewhat similar to the case at bar. After two streets had been

abandoned by the city, the land adjacent to the streets was conveyed in a deed which described the property conveyed by lot and block number. The issue facing the court was whether the deed conveyed the two strips of land which were formerly streets. The court held that the purchaser received a fee interest in one-half of the street as part of the lot.

The fee in the half of the street along which the land abuts is part of the lot; any conveyance of the lot conveys the fee in the street as part of it. The *Anderson* court held that the rule should be the same even if there is no public street, provided the conveyance describes the lot as bounded by a street. A street is then created between the grantor and grantee. (*Id.* at p. 393.)

The policy behind the law is to avoid ownership in land in strips and gores by attaching the underlying fees of streets, both active and abandoned, to the adjoining lots. If this portion of the abandoned street in the present case belonged to Safwenberg, the public policy would be defeated because the land would be divided into a strip, even though Safwenberg had adjacent land.

The only difference between the *Anderson* case and the present case is that the purchaser paid the taxes in the *Anderson* case while Marquez and Sanchez paid no taxes. However, the payment of taxes does not determine who owns the property. Civil Code section 1112 states that one-half of the street is conveyed, unless the *grant* states otherwise. Since the payment of taxes occurs outside of the grant, and occurs only after the conveyance is final, it is not relevant to the question of what was conveyed by the *grant*. The fact that a person pays taxes on another's property in the belief that he or she is the owner, does not change the fact that he or she acts as a volunteer. (*Pinsky* v. *Sloat,* 130 Cal.App.2d 579, 590 [279 P.2d 584]. See also *Dinkins* v. *Lamb,* 108 Cal.App.2d 175, 179 [238 P.2d 630].) Marquez and Sanchez each received their respective lots and one-half of the adjacent abandoned street as a matter of law.

The extrinsic evidence should not have been admitted by the trial court since the deed was not ambiguous. Courts have held that extrinsic evidence to determine the intent of the parties may be admitted if there is a metes and bounds description in the deed which conflicts with a description in the deed by lot number. *Everett* v. *Bosch,* 241 Cal.App.2d 648 [50 Cal.Rptr. 813]; *Speer* v. *Blasker,* 195 Cal.App.2d 155 [15

Cal.Rptr. 528]; *City of Redlands* v. *Nickerson,* 188 Cal.App.2d 118 [10 Cal.Rptr. 431]. In the present case, there was no metes and bounds description in the deed; the property was described by lot and block number. The trial court found, as a matter of law, that the deed was ambiguous because the measurement of the lot on the map, which was incorporated in the deed was 50 feet by 121.88 feet and the lot, without including any portion of the adjacent street was 50 feet. However, this is not ambiguous because the measurement of the lot on the map does not mean that it is the measurement of the lot conveyed.

In our view the trial court erroneously concluded that the deed was ambiguous because it disregarded the nature of the right which the county acquired when the subdivision plot was originally recorded and the streets shown thereon (including Ash Street) were dedicated to the public. The public did not acquire a fee title to the underlying land but only an easement in the surface for street purposes. In *Richards* v. *County of Colusa,* 195 Cal.App.2d 803 [16 Cal.Rptr. 232] (a case involving a county road) the court said at p. 806: "The facts as indicated clearly show a dedication of 'B' Street for road and street purposes. The filing of the plat (plat of Goad's Extension), designating certain portions of the tract as streets and alleys, was merely an offer to dedicate to the public for highway purposes the space designated on the map as streets and alleys. However, when the owner, after recording the map, sold lots designated by reference to the recorded map, as was done in the instant case, he thereby irrevocably dedicated to the use of the public the streets and alleys shown thereon. . . . Ordinarily, under the principles of common-law dedication the public takes nothing but an easement for a public use, the title to the underlying fee remaining in the original owner and passing to the successors in ownership of the abutting land. (15 Cal.Jur.2d § 56, p. 344.) Under that principle of law all that the county of Colusa obtained by the dedication and acceptance was an easement for road and street purposes. The underlying fee remained in the original owner and passed to his successors."

The rule has also been stated as follows: "When land is taken, accepted, or acquired by public authority for highway purposes, the public does not acquire the fee. It acquires only an easement for the right of way for purposes of travel, with such incidents as are appurtenant or necessary for reasonable enjoyment, construction, or maintenance. [Fn. omitted.] The abutting property owner holds the fee to the middle of the street or road, subject to the public easement of travel. [Fn. omitted.] This is merely a codification of the general rule that treats the public's

right in a highway as a mere easement. [Fn. omitted.] The rule holds true whether the interest is acquired by condemnation [fn. omitted] or by grant. . . ." (25 Cal.Jur.2d pp. 21-22, Highways and Streets § 166; see also 15 Cal.Jur.2d p. 344, Dedication § 56; see also *People* v. *Thompson,* 43 Cal.2d 13, 20 [271 P.2d 507]).

Consequently, fee title in the land underlying Ash Street was always in the abutting land owners *as a matter of law.* The abutting land owners did not acquire such fee title to the underlying land when the street was vacated since such fee title was always vested in the abutting owner. The vacation of Ash Street merely terminated the surface easement for highway purposes and vested surface rights in the abutting land owners. Streets and Highways Code section 8324 reads (in material part): "Upon the making of such order of vacation the public easement in the street or part thereof vacated ceases and the title to the land previously subject thereto reverts to the respective owners thereof free from the public easement for street purposes."

The rule has been stated as follows: "The vacation or abandonment of a highway or street, when duly effected, results not only in the relinquishment of the public easement, [fn. omitted] but also involves a physical closing, which entitles the owners of the fee of the land to take full and complete control of it. [Fn. omitted.] In the case of streets, a statute expressly provides that on the order of vacation the public easement ceases and the title to the land reverts to the owner of the fee free from the easement. [Fn. omitted.] So also, on abandonment of a dedicated highway the title reverts to the dedicator. . . ." (25 Cal.Jur.2d p. 35, Highways and Streets § 176.)

In *Neff* v. *Ernst,* 48 Cal.2d 628, 635 [311 P.2d 849], the court said: "It is the general rule that it will be presumed that *where property is sold by reference to a recorded map* the grantee takes to the center of the street or streets shown on the map as bounding the property, even though the streets shown therein appear to have been vacated or abandoned or the deed itself refers to the streets as having been vacated or abandoned. *The presumption continues to apply in the absence of a clear expression in the deed not to convey title to the center line.*" (Italics ours.)

As a consequence of the foregoing principle, we conclude as a matter of law that the deed in question was not ambiguous merely because it conveyed title to property by reference to lot and block number on a recorded subdivision map since title to the underlying fee of streets dedicated by said subdivision map was vested in abutting lot owners as a

matter of law. There was, therefore, nothing uncertain or ambiguous about the deed's description of the land conveyed. That is not ambiguous which is certain as a matter of law.

■ ·As we have concluded, the purchaser of the lot owns one-half of the adjacent street in fee in addition to the lot measurement, as a matter of law unless the grant manifests a different intent. Where there is nothing ambiguous or uncertain in the terms of a deed, extrinsic evidence cannot be admitted to add to, detract from or vary the terms of a deed. (*Pinsky* v. *Sloat,* 130 Cal.App.2d 579 [279 P.2d 584]; *French* v. *Brinkman,* 60 Cal.2d 547 [35 Cal.Rptr. 289, 387 P.2d 1].) In *Anderson,* the court disregarded the testimony of the seller who stated that she did not intend to convey the adjacent abandoned street. The statements were not relevant since the deed was not ambiguous. The agreed statement herein admits that such evidence was received over objection.

■ Here the deed, on its face, conveyed one-half of the adjacent street to Marquez and one-half to Sanchez as a matter of law. If the owner of the land had intended a different result, an indication should have been made in the deed itself.

Therefore, the judgment of the trial court should be reversed on this issue with instructions to enter judgment that Marquez and Sanchez each own in fee one-half of Ash Street which abuts their land.

Safwenberg, as cross-appellant, urges a reversal of the second finding of the trial court. She contends that the payment of taxes alone is enough to allow her to claim the land under adverse possession. ■ To acquire title by adverse possession, the claimant must establish five elements: (1) hostile acts to the true owner's title, (2) actual, open, and notorious occupancy of the land, (3) possession under a claim of right or a color of title, (4) continuous and uninterrupted possession for five years and (5) payment of all the taxes levied and assessed for the possession period. (*West* v. *Evans,* 29 Cal.2d 414 [175 P.2d 219]; *Newman* v. *Cornelius,* 3 Cal.App.3d 279, 288 [83 Cal.Rptr. 435].) Title by adverse possession may be acquired through possession or use commenced under mistake. (*Winchell* v. *Lambert,* 146 Cal.App.2d 575, 581 [304 P.2d 149].)

■ Adverse possession may be based on either color of title or a claim of right. Adverse possession under color of title is founded on a written instrument, judgment or decree, purporting to convey the land, but for some reason defective. Adverse possession under a claim of right is not founded on a written instrument, judgment or decree. California follows the majority rule that the claim of right is sufficient, whether it is

deliberately wrongful or based on mistake. (*Woodward* v. *Faris,* 109 Cal. 12, 17 [41 P. 781]; *Park* v. *Powers,* 2 Cal.2d 590, 596 [42 P.2d 75]; *Sorenson* v. *Costa,* 32 Cal.2d 453, 460 [196 P.2d 900]; *Lobro* v. *Watson,* 42 Cal.App.3d 180 [116 Cal.Rptr. 533].)

■ In the present case, Safwenberg claims that she held the land under a claim of right since she mistakenly thought that she already owned the land. However, the requirements of possession under a claim of right case are strict. The "land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.

2. Where it has been usually cultivated or improved." (Code Civ. Proc., § 325; *Brown* v. *Berman,* 203 Cal.App.2d 327 [21 Cal.Rptr. 401].) In the present case, neither of these requirements has been shown by Safwenberg. Safwenberg has established only that she paid taxes for more than five years. Her possession was at most constructive only and was not such as to give her a claim of right.[2] Therefore, her claim that the judgment denying her title by adverse possession should be reversed must be rejected.

■ Safwenberg's cause of action to quiet title is fatally defective in another aspect. She filed an action to quiet her title to the land in question, and incidentally sought to reform an ambiguous deed upon which her claim of title rested. That claim to title is based on her contention that the deeds conveyed by Frank and Alice in 1941 did not accurately describe the lands being sold.

*Pierce* v. *Freitas,* 131 Cal.App.2d 65, 68 [280 P.2d 67], states: "The California authorities distinguish between cases in which action for reformation on the ground of fraud or mistake is incidental to an action to quiet title or in ejectment, in which cases, as in the ones cited, the five year statute prevails [Code Civ. Proc., § 318] and cases where there is no attempt to recover property or establish title over and above such action for reformation, in which case the three year statute of section 338, subdivision 4, Code of Civil Procedure prevails."

---

[2]The trial court found: "6. The decedent, Alice M. Thurmond, did not make any hostile use of the above described portions of Ash Street." (Agreed statement p. 21.) We are not presented with a reporter's transcript of actual testimony. The agreed statement on appeal does not present any basis for concluding that that finding is not supported by substantial evidence. If that finding is true (as we are required to conclude that it is) then, as a matter of law, Safwenberg could not have acquired title by adverse possession. The agreed statement does not establish any basis for concluding that Thurmond or Safwenberg "protected" the property "by a substantial inclosure" or "cultivated or improved" the property as required by Code of Civil Procedure, section 325.

Safwenberg's action is therefore subject to the limitation of Code of Civil Procedure section 318. Section 318 reads: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action." Section 318 is more than an ordinary statute of limitations which constitutes merely a personal defense which is waived if not pleaded. Section 318 is an expression of public policy which bars an action to recover real property after five years, regardless of whether or not it is affirmatively pleaded.

Section 318 was interpreted in *Haney* v. *Kinevan,* 73 Cal.App.2d 343, 344 [166 P.2d 304]:

"(1) An action for the recovery of real property cannot be maintained unless the person asserting the cause of action or under whose title the action is prosecuted, or the ancestor, predecessor or grantor of such persons has been seized or possessed of the property in question within five years before the commencement of the action to enforce such right or claim. (Code Civ. Proc., § 318; *Housing Authority* v. *Pirrone,* 65 Cal.App.2d 566 [151 P.2d 22] and cases therein cited.)

"(2) An action to quiet title to real property is an action for the recovery thereof within the meaning of section 318 of the Code of Civil Procedure. (*South Tule Ind. Ditch Co.* v. *King,* 144 Cal. 450, 455 [77 P. 1032]; *Townsend* v. *Driver,* 5 Cal.App. 581, 583 [90 P. 1071].)

"(3) The burden of proof is upon plaintiffs to show that they or their ancestors, predecessors or the grantors of such persons have been seized or possessed of the property in question within five years before the commencement of the action. (*Patchett* v. *Webber,* 198 Cal. 440, 451 [245 P. 422]; *Akley* v. *Bassett,* 189 Cal. 625, 646 [209 P. 576].)

"(4) Where no evidence is introduced in support of an issue findings should be made thereon against the party who has the burden of proof. (24 Cal.Jur. (1926), p. 945, § 189.)"

*Haney* explicitly places the burden of proof upon the plaintiff to show seisin or possession within five years. (See *Lawrence* v. *Maloof,* 256 Cal.App.2d 600, 608 [64 Cal.Rptr. 233].)

Safwenberg has not carried this burden. Her cause of action to quiet title is therefore barred by section 318.

We do not find this inconsistent with traditional concepts of equity due to the overriding public policy issue involved. As early as 1236, statutes were enacted in England to prohibit real property actions based on a seisin prior to a given date.[3] The English Limitation Act of 1623[4] prohibited actions to recover land after 20 years of the accrual of the right. Such bars to actions were necessary to avoid stale claims to property and to insure peaceable possession to continue undisturbed and safe. (*Cocking* v. *Fulwider*, 95 Cal.App. 745, 748 [273 P. 142].)

The trial court herein, having found against Safwenberg on her claim of title by adverse possession,[5] Safwenberg's claim in this court rests upon her claim of seisin within five years last past (Code Civ. Proc., § 318) but her claim of seisin cannot be sustained because the deed under which she claims is by her own claim, ambiguous and must be reformed. Her claim of seisin therefore does not rest upon a written instrument but upon an alleged cause of action to reform that written instrument which cause of action is asserted incidental to her cause of action to quiet title. Under the authorities cited in *Pierce* v. *Frietas, supra,* it is barred by section 318.

We conclude, therefore, that Marquez and Sanchez each own a fee interest in one-half of the portions of abandoned Ash Street which abuts their respective properties.[6]

*The judgment is reversed. Costs to defendants-appellants.*

Stephens, Acting P. J., and Ashby, J., concurred.

---

[3] See 2 Pollock and Maitland, The History of English Law, page 81 (2d. ed. 1898).

[4] 21 Jac. I, Ch. 16.

[5] As already noted, we are bound by such finding since no record is presented that such finding that Safwenberg was not in hostile possession is not supported by substantial evidence.

[6] The issue of whether Thurmond's successors have an implied easement over the property either by a way of necessity or implied reservation was not presented below and is not decided. However, it does not appear from the map that the Thurmond land is landlocked since it abuts 8th Street. (See *Reese* v. *Borghi,* 216 Cal.App.2d 324 [30 Cal.Rptr. 868]; see also, *Orr* v. *Kirk,* 100 Cal.App.2d 678 [224 P.2d 71]; 17 Cal.Jur.2d Rev. p. 147, Easements, § 18.)