Filed 12/11/15  Madsen v. City of Canada Flintridge CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| SOREN N. MADSEN et al., | B261313 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC465772 & BC481849) |
| v. | |
| CITY OF LA CAÑADA FLINTRIDGE et al., | |
| Defendants and Respondents. | |

APPEAL from the judgment of the Superior Court of Los Angeles, Rolf M. Treu, Judge.  Reversed in part and affirmed in part.

Oliver, Sandifer & Murphy, Janice R. Miyahira, for Plaintiffs and Appellants.

Graham · Vaage, Arnold K. Graham, Alexei C. Brenot, for Defendants and Respondents City of La Cañada Flintridge and Philip Merritt.

Oddenino & Gaule and John V. Gaule for Respondent Nagi Sous.

_____

Plaintiffs and appellants Soren N. Madsen and Anne Cecile Boysen appeal from a judgment in favor of defendants and respondents City of La Cañada Flintridge (the City) and Philip Merritt in this quiet title action. After a bench trial, the trial court found the City owned Windermere Place in fee and Merritt had a private easement over Windermere Place. On appeal, Madsen and Boysen contend: (1) the City has an easement over Windermere Place for public use, not a fee interest; and (2) the trial court cannot award an easement of necessity over a public street. Respondent neighbor Nagi Sous agreed with and adopted appellants' arguments. We reverse the judgment as to the finding that that the City held Windermere Place in fee, and direct the trial court to issue a new judgment that Madsen, Boysen and Sous own the underlying fee to the centerline of Windermere Place from their respective properties. We affirm the portion of the judgment finding that Merritt has a private easement for ingress and egress over the property.

**FACTS AND PROCEDURAL HISTORY**

In 1925, the County of Los Angeles approved a subdivision map for Tract No. 8882. The owners of the land in the subdivision stated on the face of the recorded map: "we are the only persons whose consent is necessary to pass a clear title to said land and we consent to the making of said map and subdivision . . . and hereby dedicate to the public use all the Walks, Highways, Places and Drives shown on said map within said subdivision."

On the map, lots 4 and 10 have direct access to Inverness Drive. Windermere Place is located between lots 4 and 10, providing access from Inverness Drive to lot 8. Windermere Place terminates at the west end of lot 8. On the other side of lot 8 is Hampstead Road. A dedicated trail, Windermere Walk, runs along the entire south side of lot 8 between Windermere Place and Hampstead Road.

The County ordered the map approved with the statement "that all streets, lanes, alleys, roads and other portions of the land shown upon said map and therein offered for dedication be and the same are hereby accepted as public highways." The County directed its clerk to print a copy of the order on the face of the map.

Windermere Place has never been improved for use as a public street and Windermere Walk has not been improved for use by the public for trail purposes. The City incorporated in 1976. Pursuant to Streets and Highways Code section 989, all of the streets and public highways accepted by the County were transferred to the City.

In 1992, the City vacated a portion of Norham Place, which was another street dedicated as a public road within Tract No. 8882. The City described it's interest as an easement. The City resolved that the title to the property reverted to the adjacent owner.

Madsen and Boysen own lot 4. The description of the property conveyed to Madsen and Boysen in the grant deed is "Lot 4 in Block 1 of Tract No. 8882, as per map recorded in Book 118 Pages 71 to 76 inclusive of Maps, in the office of the County Recorder of said County." The description included the assessor's parcel number as well. Nagi Sous owns lot 10. Madsen, Boysen, and Sous currently access their properties directly from Inverness Drive.

Merritt purchased lot 8 in 2005. In 2006, he submitted a development application to build a new hillside home on the property with access from Windermere Place. In 2008, the City denied the application and advised him to submit a new application with access using the existing improved street Hampstead Road. Merritt filed an action against the City for inverse condemnation, which the parties settled with the City's agreement to process the original development application.

In 2010, the city council enacted a resolution approving Merritt's development project. A condition of the project required Merritt to pay to improve Windermere Place as a public street. Merritt requested the City vacate the public street over Windermere Place and grant him a nonexclusive private easement over the property to build a driveway in lieu of a public street. The City declined the request. On April 29, 2011,

Merritt filed a second action against the City for declaratory and injunctive relief to invalidate the condition to improve the property as a public street.

The City tentatively approved a resolution to vacate Windermere Place as a public street and vacate Windermere Walk as a public trail. The City noted that Windermere trail becomes very steep and difficult to use as it approaches Hampstead Road. When the City developed and adopted its Trails Master Plan, it determined not to include Windermere Walk. The City found it to be unnecessary for present or prospective public use and excess right of way, based on the lack of connection to other trails systems in the City, its topography and terrain, and the lack of use or need by the community. The City intended to grant Merritt a nonexclusive easement over the property for the construction of a private driveway to Merritt's home.

On July 19, 2011, Madsen and Boysen filed the instant complaint against the City to quiet title to Windermere Place. They alleged that if Windermere Place is vacated as a public street, the fee title from the centerline of Windermere Place to their property reverts to them.

The City approved a resolution stating that the action to vacate the City's interest would not be effective until it was recorded and it would not be recorded until the underlying ownership issue was resolved. On February 15, 2012, Merritt voluntarily dismissed his action against the City without prejudice.

Merritt and the City filed an action against Madsen, Boysen, and Sous for declaratory relief and to quiet title. On July 3, 2013, Madsen and Boysen filed the operative amended complaint, which was consolidated with the quiet title action filed by Merritt and the City.

Madsen and Boysen filed a motion for summary judgment, or alternatively summary adjudication, of whether they owned the underlying fee interest in Windermere Place from lot 4 to the centerline of Windermere Place. The trial court denied the motion. The court found Madsen and Boysen had met their burden to establish that the dedication of Windermere Place was intended to convey, and did convey, only an easement under the governing law of former Political Code section 2631. However, the

4

court found Merritt and the City had rebutted the presumption of an easement with evidence from expert declarations that lot 4 was described as a separate parcel from Windermere Place in the tract map, and no easement was identified over Windermere Place in the title documents. The court found this evidence sufficient to raise a triable issue of fact as to whether an easement or a fee interest was intended and conveyed.

Merritt and the City filed a motion in limine to prevent Madsen and Boysen from introducing evidence that access to Merritt's property should be from another street. They argued that the action was to quiet title in the fee underlying Windermere Place. Madsen and Boysen did not oppose the motion, which the trial court granted. Madsen and Boysen filed a motion in limine to prevent expert testimony interpreting the written property documents, but the court denied the motion.

A bench trial was held on August 27 and 28, 2014. Madsen and Boysen argued the language of the dedication unambiguously conveyed an easement under former Political Code section 2631. They owned the underlying property to the center of the streets bounding their property under Civil Code section 1112, unless a different intent appeared from the grant. Civil Code section 831 similarly provides a presumption that the owner of land bounded by a road or street owns to the center of the way, unless the contrary was shown. Sous also argued that he owned the underlying fee to the midline from his property. The City and Merritt argued the evidence would show: Windermere Place was a separate parcel, not carved out of other lots; the tract map contained legal descriptions and sizes of the property; and lot 4 never contained any part of Windermere Place in its legal description.

The trial court sustained a hearsay objection by Madsen and Boysen to the title report for their property and excluded the document from evidence. In ruling on a different evidentiary objection, the trial court noted the sole issue was quiet title. The attorney for the City and Merritt responded that an additional issue was Merritt's permanent right of ingress and egress by way of easement over Windermere Place, regardless of the fee owner.

5

Merritt testified that the slope of the land from Hampstead, which abuts lot 8, is approximately 50 percent. Vehicle access would be impossible because of the slope, and even if a driveway were constructed, the minimum height of a garage would violate building code limitations. The attorney for Madsen and Boysen asked Merritt on cross-examination whether the City told him in negotiations that he could access his property from Hampstead Road. The attorney for the City and Merritt objected on the ground that the court had precluded evidence concerning access other than from Windermere Place. The trial court permitted limited questioning based on the issues brought up in the direct examination. Merritt could not recall whether the City offered him access from Hampstead Road.

The City and Merritt presented an expert in real estate law, Charles Hansen, who interpreted the dedication as conveying a fee interest in Windermere Place to the County. Among the materials that he reviewed in forming his opinions was the title report for lot 4. Hansen explained that the dimensions notated on the assessor's map were not a metes and bounds description. Assessor's parcel numbers are for the convenience of the tax assessor, who does not have to honor the Subdivision Map Act or other subdivision laws. The tract map contains all of the elements of a metes and bounds description in pictorial form. Unlike the assessor's map, the tract map contains course and distance pairs, which contain all of the information that would be found in narrative form in a metes and bounds description, including angles and curves.

Hansen opined that Windermere Place was created separately from the surrounding lots. He had not reviewed the subdivision recording statutes in effect in 1925. He agreed that the portions of the dedication of streets on the subdivision map were taken from statutory language.

The City and Merritt also called land surveyor expert Carson Storer, who interpreted the dedication as conveying a fee interest in Windermere Place to the County. Among other documents, Storer reviewed the title report for lot 4. He explained that lot 4 is described by metes and bounds on the tract map, which tells the surveyor how to survey the lot. "Metes and bounds" refers to the same measurements as "bearings and

6

distances." Using the metes and bounds description, he was able to determine the property lines and the right-of-way lines for the streets. He concluded Windermere Place was a separate parcel at the time of dedication. In his experience, if Windermere Place had been dedicated as an easement, easement language would have been included in the owner's dedication of the property.

He has prepared approximately 50 subdivision maps in his career since he was licensed in 1971. All of the lots and streets in the maps that he has created have bearing and distance lines shown. In fact, state law requires the lots and streets on a subdivision map to have bearing and distance lines. The fact that the map for Tract No. 8882 had bearings and distances was consistent with Storer's expectations for a subdivision map. He has not reviewed any California statutes concerning recording subdivision maps in his career.

There is a line on the tract map that bisects the center of Windermere Place. Storer explained the line is related to the centerline, but is not precisely the centerline. The lines shown dividing the roadways are for the purpose of surveying the centerlines of the roads and the intersection of the lot lines. These lines determine the alignment of the roads in relation to the property line of the surrounding lots.

The parties filed written closing arguments. On November 18, 2014, the trial court found in favor of the City and Merritt. On December 22, 2014, the trial court entered judgment in favor of the City and Merritt as follows: the City is the fee title owner of the land underlying the dedicated and accepted public street known as Windermere Place; Windermere is necessary for lot 8 to have full connection and access from Inverness Drive; and Windermere is subject to a permanent easement to the benefit of lot 8 for access to Inverness Drive. The court found the City and Merritt were the prevailing parties entitled to costs. Madsen and Boysen filed a timely notice of appeal.

## DISCUSSION

## Interpretation of Written Document and Standard of Review

7

The court interprets a written instrument as a matter of law, unless there is a material conflict in the extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*); *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.) This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439.) "Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence. [Citations.] But when . . . ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact . . . [citation.]." (*City of Hope*, *supra*, at p. 395, fn. omitted.)

"'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' [Citation.]" (*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1241.) Factual findings based on conflicting evidence must be sustained if supported by substantial evidence, and we review conclusions of law based on those findings de novo. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266-1268 & fn. 4.)

"'While an expert may state on direct examination the matters on which he relied in forming his opinion, he may not testify as to the details of such matters if they are otherwise inadmissible. [Citations.] The rule rests on the rationale that while an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence. [Citation.]'" (*People v. Coleman* (1985) 38 Cal.3d 69, 92.)

## Ownership of Underlying Fee in Windermere Place

Madsen and Boysen contend they own the underlying fee to the centerline of Windermere Place and the City has only an easement over Windermere Place for public use.  We agree.

In creating and recording the map for the subdivision, the owners of the property dedicated all of the walks, highways, places, and drives shown on the map within the subdivision to the public use.  This language created an easement.  Language referring to the owners' ability to convey clear title merely established that the owners had the authority to make the subdivision map and dedicate certain property for the public use.  Nothing in the dedication grants property to the County in fee or conveys title to the County.  It establishes the right to use certain property for the public.  This is an easement over the property for the public use.

Our interpretation of the dedication is consistent with the governing law.  At the time that the subdivision map was recorded, former Political Code section 2631 provided: "By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided."  By statute, the County accepted only an easement over certain property for the public use.

It is the province of the court to interpret the language of a written document.  None of the extrinsic evidence offered by the City and Merritt supported the expert testimony that the document was ambiguous or susceptible of a different interpretation.

The grant deed for lot 4 is consistent with our interpretation of the dedication.  Civil Code section 831 provides: "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."  Civil Code section 1112 similarly provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."  "In case of doubt, the

9

deed must be construed in favor of the grantee.  (Civ. Code, § 1069.)"  (*Neff v. Ernst* (1957) 48 Cal.2d 628, 635 (*Neff*).)  "The policy behind the law is to avoid ownership in land in strips and gores by attaching the underlying fees of streets, both active and abandoned, to the adjoining lots."  (*Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301, 306 (*Safwenberg*).)

When property is sold by reference to a recorded map, the grantee is presumed to take to the center of the street or streets shown on the map as bordering the property, even if the street shown on the map appears to have been vacated or abandoned.  (*Neff*, *supra*, 48 Cal.2d at p. 635.)  "The presumption continues to apply in the absence of a clear expression in the deed not to convey title to the center line.  [Citations.]"  (*Ibid*.)

If a deed contains a metes and bounds description which conflicts with the lot number description in the deed, the court will allow extrinsic evidence to determine the parties' intent.  (*Safwenberg*, *supra*, 50 Cal.App.3d at pp. 306-307.)  However, if the deed describes the property by lot and block number, and does not contain a metes and bounds description in the deed, title to the underlying fee of streets dedicated by the subdivision map is vested in the abutting lot owners as a matter of law and there is no ambiguity in the deed.  (*Id.* at pp. 308-309.)

In *Safwenberg*, property was described in a grant deed by lot and block number; there was no metes and bounds description in the deed.  The trial court concluded the deed was ambiguous, because the measurement of the lot on the subdivision map, which was incorporated in the grant deed, did not include any portion of the adjacent street.  (*Safwenberg*, *supra*, 50 Cal.App.3d at pp. 306-307)  The appellate court disagreed: "[T]his is not ambiguous because the measurement of the lot on the map does not mean that it is the measurement of the lot conveyed."  (*Id.* at p. 307.)

In this case, the grant deed to lot 4 described the property by lot and block number, with reference to the recorded tract map.  The grant deed did not contain a metes and bounds description.  It did not limit or exclude the boundary streets from the property description.  As a matter of law, the property included the underlying fee to the centerline of the boundary streets.  The fact that the metes and bounds on the tract map do not show

any portion of Windermere Place within the boundary of lot 4 is irrelevant, because the measurement of the lot on the map is not the measurement of the lot conveyed by the grant deed.

The dedication of the property, the County's acceptance of the dedication under the governing statutes, and the grant deed for lot 4 are consistent. No admissible extrinsic evidence was presented that Windermere Place was granted in fee to rebut the presumption that the County obtained only an easement. The judgment must be reversed on this issue with instructions to enter judgment that the owners of lot 4 own in fee the half of Windermere Place which abuts their land.

**Lot 8's Easement to Access Inverness Drive**

The trial court's finding that lot 8 has an easement over Windermere Place to access Inverness Drive is supported by the law and substantial evidence.

"'It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and that this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law. [Citations.]' (*Danielson v. Sykes* (1910) 157 Cal. 686[,] 689.)" (*Ratchford v. County of Sonoma* (1972) 22 Cal.App.3d 1056, 1070, fn. 6.)

As explained in *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 167, "[A] private easement of ingress and egress burdens all public streets in favor of the abutting parcels [citations], and that this easement continues even though the city by vacation terminates the public right of access to the street. [Citations.]"

"A right-of-way to pass over the land of another carries with it 'the implied right . . . to make such changes in the surface of the land as are necessary to make it available

11

for travel in a convenient manner.'  (*Ballard v. Titus* (1910) 157 Cal. 673, 681.)"
(*Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428.)  "Incidental or secondary
easement rights are limited by a rule of reason.  'The rights and duties between the owner
of an easement and the owner of the servient tenement . . . are correlative.  Each is
required to respect the rights of the other.  Neither party can conduct activities or place
obstructions on the property that unreasonably interfere with the other party's use of the
property.  In this respect, there are no absolute rules of conduct.  The responsibility of
each party to the other and the "reasonableness" of use of the property depends on the
nature of the easement, its method of creation, and the facts and circumstances
surrounding the transaction.'  (6 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 15:63, p.
15-215 (rel. 8/2006).)"  (*Id.* at pp. 428-429.)

Lot 8 abuts Windermere Place on the recorded subdivision map, giving the owner
of lot 8 an easement in Windermere Place for ingress and egress independent of the
dedication to public use.  Merritt's improvement of Windermere Place with a driveway is
less of a burden to the servient tenements than the City's use of the property as a public
street.  There is no evidence that a driveway over Windermere Place has any impact on
the City's ability to improve Windermere Place as a public street in the future.  The trial
court correctly determined that the owner of lot 8 has an easement over Windermere
Place for ingress and egress.

## DISPOSITION

The judgment is reversed on the issue of fee ownership of Windermere Place. The trial court is instructed to enter a new judgment on that issue in accordance with this opinion. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

KRIEGLER, J.

We concur:

TURNER, P. J.

BAKER, J.