Filed 9/25/25  Weseloh v. County of Santa Cruz CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER J. WESELOH et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COUNTY OF SANTA CRUZ, <br><br> Defendant and Appellant. | H050433 <br> (Santa Cruz County <br> Super. Ct. No. 18CV03315) |
| CHRISTOPHER J. WESELOH et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> COUNTY OF SANTA CRUZ, <br><br> Defendant, Cross-complainant and Appellant. | H051907 <br> (Santa Cruz County <br> Super. Ct. No. 18CV03315) |

This appeal arises from a dispute regarding the ownership and usage rights of a strip of beachfront property, known as the 37-foot walk, located in

Santa Cruz County (County). The plaintiffs are owners and representatives of the owners of residential property in a subdivision in the Rio Del Mar area of Aptos (hereafter, collectively the Homeowners).[1] The rear of the Homeowners' homes abut the concrete 37-foot walk, which they and their predecessors have used as private patios for many decades.

Although the 1928 subdivision map recorded by the original developer included an offer to dedicate the 37-foot walk to the County for streets and highways, the 37-foot walk was never used as a street or highway. Due to the County's later assertions of a public interest in the 37-foot walk, the Homeowners filed the instant quiet title action seeking a declaration that the Homeowners had fee title to the 37-foot walk and the County had no interest.

After the County demolished the fence and masonry wall that had prevented public access to the 37-foot walk, which caused a negative impact on the Homeowners' use of the patios, the Homeowners amended their complaint to seek compensatory damages for inverse condemnation and injunctive relief. The County filed a cross-complaint seeking to quiet title in the 37-foot walk in the County's favor on the ground that the County had accepted the developer's offer to dedicate the 37-foot walk to the County for public use.

---

[1] By the time of judgment, the plaintiff homeowners included the following: Christopher J. Weseloh, Gretchen and Dominic Kotab, Scott C. Poncetta, Danielle and Greg Poncetta, Frederick and Muriel Schlichting, Michael Walker, James S. and Josephine Vaudagna, James P. Vaudagna, Stuart Becker, John and Barbara Kontoudakis, Renee Ellis, Fred Bialek and Betty George Bialek, Jan Ahrens, Shelley Lawrie, William L. Lawrie, Jay and Gail Schwartz, Barbara Venturacci, Joseph Melehan, Roya Hosseini, Mary Christi Becerra, Eric Martin Stark, Majid Gerami, Kenneth Martz, Donald Lee Lucas, Geoffrey Van Loucks, Brad Robson, and Paula Pyers.

The matter proceeded to a court trial in which the trial court found in favor of the Homeowners and against the County. In the February 29, 2024 judgment, the trial court ruled that the County has no title or interest in the 37-foot walk or any portion of it and quieted title in the plaintiff Homeowners and any subsequent owners against any adverse interest by the County. The judgment also includes stipulated damages of $3.7 million on the cause of action for inverse condemnation. Additionally, the judgment included the December 26, 2023 order granting a permanent injunction authorizing the Homeowners to immediately erect temporary fencing to close off public access to their patios on the 37-foot walk.

On appeal, in case No. H051907, *Weseloh et al. v. County of Santa Cruz*, the County argues that the trial court erred in entering the February 29, 2024 judgment in favor of the Homeowners because (1) the Homeowners cannot establish title to the 37-foot walk since the offer to dedicate the 37-foot walk and the County's acceptance were recorded in 1929; (2) the Homeowners cannot establish title to the 37-foot walk based on the doctrine of equitable estoppel; and (3) the 1980 coastal development permit for the repairs to the seawall on the 37-foot walk requires public access and therefore the Homeowners are not entitled to compensation for inverse condemnation. For the reasons stated below, we decide that the Homeowners have fee title to the 37-foot walk, subject to the County's public right-of-way easement. Because we reverse the judgment, we also dismiss the Homeowners' protective cross-appeal.

In case No. H050433, *Weseloh et al. v. County of Santa Cruz*, the County argues that since the judgment must be reversed, the December 26, 2023 order granting a permanent injunction authorizing the Homeowners to immediately erect temporary fencing to close off public access to their patios

on the 37-foot walk must be vacated.  We agree and will vacate the order granting a permanent injunction.[2]

## I.  FACTS AND PROCEDURAL BACKGROUND

A.  *Complaint and Cross-complaint*

### 1.  Complaint

According to the allegations of the second amended complaint (complaint), in 1928 the original developer, defendant Peninsula Properties Company (Peninsula Properties), recorded a subdivision map that created beachfront lots, including the lots now owned by the Homeowners.  The 1928 subdivision map also included an offer of dedication to defendant County for " 'highway purposes' " a 37-foot wide strip of land (known as the "37-foot walk") that abutted the lots on the seaward side.  As noted in writing on the recorded 1928 map, the Santa Cruz County Board of Supervisors (Board of Supervisors) rejected the offer of dedication.  The Homeowners allege that the County never recorded an acceptance of the offer to dedicate the 37-foot walk.

Between 1932 and the late 1950's, nearly all the beachfront lots shown in the 1928 subdivision map were developed with single family homes and sold to third parties.  According to the Homeowners, the County has never used or maintained the 37-foot walk, while the Homeowners and their predecessors have improved the 37-foot walk and used it as their private patios.

---

[2] The parties' joint motion and stipulation to consolidate appeals, was deemed a request to consider case Nos. H050433 and H051907 together for purposes of record preparation, briefing, oral argument, and disposition, and was granted on April 19, 2024.

In 1963, a successor to Peninsula Properties, Santa Cruz Land Title, recorded a formal revocation of the offer to dedicate the 37-foot walk to the County. The Homeowners allege that between 1973 and 1975, the County attempted to claim ownership of the 37-foot walk and quitclaim the property to the California State Lands Commission. However, the Homeowners assert that the California State Lands Commission declined the proposed transfer because the County did not have an ownership interest in the 37-foot walk.

In 1975, the County requested that the Homeowners or their predecessors execute quitclaim deeds to their portions of the 37-foot walk. The request was made in letters that acknowledged that the adjacent property owners had an " ' "underlying fee" interest' " in the 37-foot walk.

After a major storm in 1980, the Homeowners, through the Rio Del Mar Beach Island Homeowners' Association (HOA), obtained permits from the County and the California Coastal Commission (Coastal Commission) to construct a seawall on a portion of the 37-foot walk, leaving 20-foot patios between the homes and the seawall. The Homeowners also assert that the Coastal Commission made a finding that construction of the seawall and reconstruction of the patios did not impact coastal access.

According to the Homeowners, the parcels that they currently own have been sold or transferred multiple times since 1963, when the Santa Cruz Land Title recorded a revocation of the 1928 offer to dedicate the 37-foot walk to the County.

The Homeowners also allege that they or their predecessors have paid property taxes on the portions of the 37-foot walk that directly abut their properties.

In February 2018, the County posted a notice of violation on the "Lucas Property" stating that the fence and gate on the 37-foot walk were higher

than allowed under the county code. The notice of violation did not indicate that the fence and gate were a nuisance or subject to demolition, and no abatement order was issued.

Later, in October and November 2018, the County sent letters to the owner of the "Nelson Property" requesting that an unspecified wall on the 37-foot walk be removed. The County did not notify the property owner that it had determined that the masonry wall was a nuisance. According to the Homeowners, these structures were either permitted or their construction predated the County's permit requirements.

As stated in a December 5, 2018 internal memorandum, the County issued a notice of exemption from the California Environmental Quality Act (CEQA) and a notice of exemption from review under the "Coastal Act," and authorized demolition of the fence, gate, and masonry wall on the 37-foot walk. Thereafter, on December 18, 2018, the County demolished the fence, gate, and masonry wall without any notice to the Homeowners or the HOA and without a hearing, although the instant quiet title action was pending.

The Homeowners appealed the County's notice of exemption from CEQA and the notice of exemption from the requirement of a coastal development permit for the demolition of the structures on the 37-foot walk, and also appealed the Coastal Commission's concurrence that the demolition was exempt. Both appeals were denied.

According to the Homeowners, a county supervisor incited the public on social media to use the now open 37-foot walk and the County posted public access signs. The Homeowners allege that public access to their private patios on the 37-foot walk has caused vandalism, invasion of the Homeowners' privacy, and threats to their safety.

6

Based on these and other allegations, the Homeowners assert the following causes of action:  (1) quiet title (quieting title in the Homeowners as owners in fee simple as to the portions of the 37-foot walk that directly abut their properties); (2) petition for writ of mandate (Code Civ. Proc., §§ 1085, 1094.5[3]),  directing the County to comply with CEQA; (3) petition for writ of mandate (Pub. Resources Code, § 30600, subd. (a)) for injunctive relief consisting of the restoration of the disputed properties to their original condition due to the County's failure to obtain a coastal development permit for the demolition of the fence, gate, and masonry wall on the 37-foot walk; (4) declaratory relief, including a declaration quieting title in the 37-foot walk to the Homeowners and a declaration that the County's demolition of the fence, gate, and masonry wall on the 37-foot walk without notice and an opportunity to be heard violated constitutional due process; (5) violation of due process (42 U.S. Code § 1983); and (6) inverse condemnation (the County's efforts to open the 37-foot walk as a public walkway constituted a taking and damaged the Homeowners' property without just compensation).[4] In addition to injunctive relief, the Homeowners seek damages and attorney fees.

### 2.  Cross-complaint

The County filed a first amended cross-complaint (cross-complaint) that names the Homeowners as cross-defendants and asserts that the 37-foot walk

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4] "[A]n 'inverse condemnation' action may be pursued when the state or other public entity improperly has taken private property for public use without following the requisite condemnation procedures." (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 377; Cal. Const. art. I, § 19.)

is a "public space and right of way," based on the following factual allegations:

The 1928 subdivision map recorded by Peninsula Properties included an offer to dedicate the 37-foot walk for public use as streets and highways. The Board of Supervisors approved the map but did not accept the dedication. In 1929, Peninsula Properties recorded a renewed offer of dedication that included the 37-foot walk. The Board of Supervisors accepted and recorded the dedication in 1929. Also in 1929, the Board of Supervisors recorded a resolution of intention that included construction of a timber bulkhead and a macadam sidewalk on the 37-foot walk.

The County further alleges that in 1980 the Board of Supervisors issued an order mandating that the 37-foot walk be preserved for public use. Additionally, the County alleges that the county assessor parcel maps show the 37-foot walk as property separate from the homes. The County asserts that no homeowners have been assessed property taxes on the 37-foot walk.

According to the County, the Homeowners have unlawfully constructed and maintained physical barriers to the 37-foot walk at the primary access and egress points, and maintained patio furniture, privacy partitions, and other obstructions, thereby blocking public use of the 37-foot walk. Further, the Homeowners have rented portions of the 37-foot walk as patios for certain homes without permission.

Based on these and other allegations, the County asserts causes of action for (1) declaratory relief (the Homeowners have no ownership rights, title, or interest in the 37-foot walk); (2) quiet title (quieting title in the 37-foot walk in the public and the County against the Homeowners); and (3) violation of Santa Cruz County Code section 10.08.010 (certain Homeowners

8

have rented their properties, including the publicly-owned 37-foot walk, without obtaining a permit from the Board of Supervisors).

In its cross-complaint, the County seeks civil penalties, restitution, attorney fees, and costs.

B. *Court Trial*

### 1. Bifurcation of Trial Issues

Before trial, the County moved for an order bifurcating for the initial trial the following issues: (1) the liability element of the Homeowners' sixth cause of action for inverse condemnation; (2) the first cause of action for declaratory relief of the County's cross-complaint; and (3) the second cause of action for quiet title of the County's cross-complaint. In support of the motion, the County argued that an initial determination of the ownership of the 37-foot walk would, among other things, avoid proceedings related to issues and claims that would be moot if the 37-foot walk were found to be public property. The trial court granted the motion to bifurcate.

### 2. Summary of Trial Evidence

We summarize the pertinent witness testimony and other evidence presented at the court trial.

#### a. Offer of Dedication

In 1928, Peninsula Properties submitted to the Board of Supervisors a subdivision map, consisting of four sheets, for a subdivision titled "Aptos Beach Country Club Properties." Sheet No.1 shows the location of the beachfront 37-foot walk adjoining the subdivided lots, which are sandwiched between the 37-foot walk and Beach Drive. Sheet No. 4 includes the following offer of dedication: "That the land delineated and designated thereon as . . . 37[-foot] [w]alk, is intended and is hereby offered for dedication as streets and highways for public use." Sheet No. 4 also includes

9

the Board of Supervisors' approval of the map, which states that the Board of Supervisors "approves this map, but does not accept any of the streets shown thereon, as public highways." Sheet No. 4 states that the subdivision map was recorded on August 24, 1928.

In March 1929, Peninsula Properties submitted to the Board of Supervisors a renewed offer to dedicate for public use, among other properties, the 37-foot walk. The renewed offer of dedication indicates that it was recorded on May 13, 1929. The record also includes an unnumbered resolution of the Board of Supervisors dated May 7, 1929, which certifies that the Board of Supervisors accepts the renewed offer of dedication of the specified properties as streets or public highways, including the 37-foot walk. The May 7, 1929 resolution also states: "Resolved, that a certified copy of this resolution be attached to the offer of dedication and both be placed on file as a public record in the office of the county recorder of Santa Cruz County."

The 1929 resolution accepting the renewed offer to dedicate the 37-foot walk does not show on its face that the resolution was recorded. However, the County's assistant recorder, Carol Sutherland, testified that the renewed offer of dedication of the 37-foot walk and the Board of Supervisors' resolution accepting the offer were recorded because Volume 160 of the County's general index of recorded documents states that an "Offer of Dedication [and] Acceptance" between the County and Peninsula Properties were recorded on May 13, 1929 (six days after the resolution by the Board of Supervisors accepting the renewed offer of dedication).

In 1963, the Santa Cruz Land Title Company, the successor in interest to Peninsula Properties, recorded a revocation of the offer of dedication in the 1928 subdivision map for Aptos Beach Country Club Properties.

10

b. Use of the 37-foot Walk

A Board of Supervisors resolution dated May 7, 1929, states that the Board of Supervisors adopted official plans and specifications for improvement of certain streets, including the 37-foot walk. Although the resolution did not specify the improvements planned for the 37-foot walk, the resolution generally states that the numerous improvements planned for certain streets would include constructing concrete walks and steps and an asphaltic macadam sidewalk. The trial evidence did not show that any of improvements planned for the 37-foot walk were ever constructed by the County.

Construction of the homes adjoining the 37-foot walk is believed to have begun in the 1930's, as shown in historic photographs of the Rio Del Mar area where the 37-foot walk is located. Another photograph, dated no later than 1963, shows that the existing homes abutted the paved 37-foot walk, with fencing around the end of the 37-foot walk at 300 Beach Drive. During the 1960's, homeowner Christopher Weseloh visited the Rio Del Mar area. Weseloh recalled that in the 1960's and 1970's the 37-foot walk was used as patios by the homeowners and a locked fence was present at the "down coast" end of the walk.

Sandy Lydon, a former community college faculty member, recalled walking on the 37-foot walk in 1970 through the patios and around barbecues and chaise lounges. He did not see any fencing. Lydon also walked on the 37-foot walk many times in the 1970's through 2016, when he taught a local history class about Aptos and took his students on a tour that included the 37-foot walk. Lydon remembered a fence on the down coast side that prevented exit from the 37-foot walk there.

11

After storm damage occurred in 1980, the HOA applied to the Coastal Commission for a permit to construct a 787-foot seawall and replace eight feet of concrete patios on the 37-foot walk. The HOA also applied to the County for an encroachment permit. Both permits were issued, and the rip-rap seawall[5] and patio repairs were completed at the HOA's expense. In 1981, a masonry wall was constructed with a permit at 202 Beach Drive and 204 Beach Drive that enclosed the "up coast" end of the 37-foot walk.

In 1985, Weseloh's parents purchased the home at 235 Beach Drive. At that time, their home, along with the other Beach Drive homes, had a 20-foot contiguous concrete patio on the 37-foot walkway. The Weseloh family used the patio space as a family gathering place and children's play area, as did homeowner Paula Pyers, who purchased 264 Beach Drive in 2012. In 2013, Pyers obtained a County building permit for a set of exterior stairs to replace the existing stairs that extended from the rooftop deck to the patio.

### c. Dispute Regarding Ownership of 37-foot Walk

The County's chief real property agent, Kimberly Finley, testified that a 1947 inventory of county roads indicated that there was no improvement to the 37-foot walk. She did not have any information indicating that the County had spent any money between 1935 and 1960 maintaining the 37-foot walk as a public street or roadway.

According to Claudia Cunha, the County's chief deputy assessor, a 1951 assessor's parcel map and later parcel maps showed that the 37-foot walk is public property. Cunha testified that the homeowners would not have been

---

[5] Rip-rap is "a foundation or sustaining wall of stones or chunks of concrete thrown together without order (as in deep water)." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/riprap> [as of Sept. 25, 2025] archived at <https://perma.cc/TJN6-EFUH>.)

assessed property taxes for the 37-foot-walk because it does not have a parcel number and is public property. In 1953, the Board of Supervisors received a recommendation from the County road commissioner that the "county road" known as the 37-foot walk be abandoned, and ordered that the recommendation be referred to the district attorney. There was no evidence that a Board of Supervisors' resolution abandoning the 37-foot walk was ever recorded, as required by Streets and Highways Code former section 960.2.[6]

In 1958, the County planning commission recommended to the Board of Supervisors that the 37-foot walk be offered for sale to the "encroaching property owners," and the Board of Supervisors accepted the recommendation and ordered the sale. However, the Board of Supervisors rescinded the sale after receiving a communication from the planning commission stating that the County did not have title to the 37-foot walk.

In 1968, the County's director of public works prepared a memo regarding an investigation of the 37-foot walk in connection with an application for an encroachment permit to allow construction within the walkway. The memo stated that the property owners had been allowed to use the 37-foot walk as private patios for many years without protest by the County, although the County had an easement on the walkway. The director of public works recommended that the permit application be denied, and the property owners be notified that the 37-foot walk was a public walkway and

---

[6] This statute provided, "The board of supervisors may act to abandon any easement or to vacate any highway, mentioned in [s]ection 960.1, by resolution. A certified copy of such resolution shall be recorded in the office of the county recorder. No fee shall be charged for such recordation. On such recordation, the abandonment or vacation is complete." (Sts. & Hy. Code, former § 960.2, added by Stats. 1941, ch. 970, § 3, p. 2601.)

was not for private use. There was no evidence that the property owners received the recommended notice.

In 1973, the chairman of the County Board of Supervisors executed a deed of conveyance that included, among other properties, conveyance of the 37-foot walk to the State of California. The deed of conveyance stated that, as part of a 1973 development plan, a 12-foot walkway would be relocated to the seaward side of the 37-foot walk at a height no higher than the "existing patio areas." The state declined to accept the conveyance because a title report showed the properties to be encumbered. In response, the County requested in a 1975 letter to the property owners that they quitclaim their fee interest in the 37-foot walk, although the County asserted public easement rights. There was no evidence of any such deeds being executed with regard to the 37-foot walk.

In 1980, the Coastal Commission issued a permit to the HOA for construction of a 787-foot rip rap seawall on the beach in front of the homes and replacement of eight feet of patio at the rear of each home. The Coastal Commission staff comments included on the permit stated: "Public access would appear to not be affected by this project. The proposed seawall would be located up against the residences, leaving the beach normally used by the public free of impediments. It would not affect lateral access to the beach as access from the existing parking lots on both ends of the proposed sea wall to the beach will remain open. The proposed sea wall is located on an existing 37-[foot] wide public easement. . .. Historically, however, this easement has been partially covered by a 20-[foot] concrete path (used by the residences as private decks), and it would appear that the remainder of the easement was covered by an ice-plant vegetated berm. The County is exploring their interests in the easement and staff will report any new information at the

14

Commission meeting. [¶] Those members of the public who walk down to Seacliff State Beach will still be able to walk onto the beach at the end of the seawall without obstruction."

The County issued a 1980 encroachment permit to the HOA for construction of the seawall on the 37-foot walk. The permit states: "The 37 foot public easement shall be retained for public use and the public shall have a right to use a walkway parallel to the ocean and Beach Drive along the whole length of the 37[-]foot easement which shall be preserved." The HOA financed and oversaw the construction of the seawall.

In a 2004 letter from the County Assessor, Gary E. Hazelton, to the president of the HOA, Hazelton responded to a query regarding the impact of redrawing the property lines to incorporate the 37-foot walk, as follows: "[I]t is my position that we would not reappraise any of the properties if the 37[-foot] walk is incorporated into the existing parcels. I believe that over the years (since 1928) there has been an implied ownership of the walk by the homeowners along Beach Drive. The only change that would occur is if the properties are combined a new parcel number will be assigned to each of the parcels."

Albert Ramseyer, a retired Los Angeles County appraiser, testified on behalf of the Homeowners as an expert witness. Having reviewed Hazelton's letter and other documents, Ramseyer concluded that the property owners had paid property taxes on their patios on the 37-foot walk, based upon his review of some County assessments that expressly included the patios and others that he determined showed that the County assessors' property valuations reflected the value of the patio.

15

> d. County Removal of Fence and Masonry Wall on the
> 37-foot Walk

In 2015, Ryan Moroney, the district supervisor for the Coastal Commission's Central Coast regional office, contacted the County regarding his investigation of the fence on the downcoast end of the 37-foot walk near 300 Beach Drive. Moroney assumed that the 37-foot walk was public property. Moroney also contacted the County in 2016 stating that from the Coastal Commission's perspective, the fence impeded public access to the beach. The Coastal Commission wanted the fence to be removed so the public could use the entire length of the 37-foot walk.

Pyers, the owner of 264 Beach Drive, received a notice of violation dated October 17, 2017, from the Coastal Commission that instructed Pyers to immediately remove all encroachments from the public 37-foot walk, including decks, furniture, privacy walls, etc., because the encroachments violated the public access provisions of the Coastal Act that applied to the 37-foot walk. In the letter, which was also sent to other property owners, the Coastal Commission stated that Pyers would be subject to civil penalties of up to $11,250 per day if she failed to comply. Further, the letter stated that the HOA had added more rock to the rip rap sea wall that was either unpermitted or exceeded the authorization of the coastal development permit.

Pyers then contacted N. Patrick Veesart, the author of the October 17, 2017 Coastal Commission letter. Veesart informed her that the exterior stairs on her property were the concern, and when she told him she had a County permit for the stairs, he said to contact the County. Pyers then contacted the office of the County Counsel and was informed that she had to remove the stairs despite having constructed the stairs with a County permit. After sending documentation of the County permit to the Coastal

16

Commission, Pyers did not receive any further notice of violation regarding the exterior stairs.

Kathy Molloy, the former director of the County planning department, made the decision to remove the fence and masonry wall on the 37-foot walk. During her tenure as planning director, she believed that the 37-foot walk was public property, and the presence of the fence and masonry wall impeded public access to the beach. A February 7, 2018 notice of violation was sent to the owner of 300 Beach Drive by the County planning department that stated the violation was a "fence/wall exceeding height restrictions" and the "immediate corrective action[]" required the property owner to "work with state parks and zoning staff for a resolution." (Capitalization omitted.)

Molloy reviewed an October 2018 letter from the homeowner of 202 Beach Drive, Barbara Nelson, stating that the masonry wall was on public property. In an October 17, 2018 letter to an attorney who has represented the Homeowners in this matter, the assistant County Counsel proposed a resolution to the dispute regarding the use of the 37-foot walk. The letter, which was reviewed by Homeowner Pyers, stated that the 37-foot walk would be opened for 24-hour public use in 30 days, with public access signs posted. However, the letter also stated that the HOA could apply for an encroachment permit for the eight feet extending from the property line into the 37-foot walk with an initial public path 12 feet in width. The HOA did not apply for the encroachment permit because the HOA believed it owned the 37-foot walk.

In December 2018, Molloy met with County Supervisor Zach Friend, and others regarding the 37-foot walk. Molloy believed that there was a long history of notices of violation and that the fence at 300 Beach Drive encroached on public property. She therefore decided that the County could

17

declare the fence to be a nuisance and tear it down. However, Molloy did not determine that the fence posed an immediate threat to public health and safety. She did not know when the fence or masonry wall were constructed.

In her December 5, 2018 internal memo to the County counsel's office, Molloy stated: "With this memo I am making the determination that the fence and the [masonry] wall, constructed without permits within the County [r]ight[-]of[-][w]ay, constitute a public nuisance by restricting access to the public beach frontage, and am requesting County [c]ounsel to commence actions or proceedings for the abatement of the public nuisance by removal of the fence and the wall from the public [r]ight[-]of[-][w]ay, in the manner provided by law." At the time she wrote the memo, Molloy did not know that the Homeowners had filed the instant quiet title action regarding the 37-foot walk.

Neither Weseloh or his family received any notice that the County intended to tear down the fence and masonry wall on the 37-foot walk on December 18, 2018. They learned about the demolition from neighbors and a television news clip showing the demolition. After the demolition, Weseloh observed public access signs had been placed on the 37-foot walk and there was a social media campaign encouraging its public use. Although Weseloh's 86-year-old mother still visits their house at 235 Beach Drive, she does not feel safe staying there by herself because the 37-foot walk is now used by dogs and bicycles, people walk up to the windows of her house and peer in, and vandalism and break-ins have occurred.

After the County tore down the fence and masonry wall and opened the 37-walk to public access, Pyers similarly experienced a significant change to the privacy and safety of her house at 264 Beach Drive. For example, Pyers noticed two women standing at a window and peering into her house from the

patio while she was having dinner. Pyers now experiences her patio as unsafe because electric bikes and scooters use the 37-foot walk and people congregate in large groups on the patio. Her children refuse to go to the house now because they perceive the patio as unsafe.

### C. Tentative Statement of Decision

In the June 21, 2022 tentative statement of decision, the trial court ruled that the County did not have a public interest in the 37-foot walk and the Homeowners had succeeded in proving their claim for inverse condemnation.

The trial court's ruling was based on the court's findings that (1) "Trial evidence verified that no acceptance was ever found and that the 'renewed' offer [of dedication] was not verified. No updated map was ever prepared;" (2) the 37-foot walk was closed off by a fence or gate on each end for 50 years; (3) from 1929 to 2018, the 37-foot walk was used and maintained by private homeowners; (4) County representatives admitted at various times that the County did not have an interest in the 37-foot walk; (5) the County never made any expenditures for maintenance or improvement of the 37-foot walk; and (6) the Homeowners testified as to the adverse impacts to their property with the removal of the wall and gate, which satisfied the inverse condemnation element of a substantial burden on their property.

The trial court emphasized that the evidence showed that the area described as the 37-foot walk had never been used as a road, street, or highway; the 37-foot walk had been "bought and sold throughout the past thirty years, or more, as part of the residences located along this [w]alk, and that the [w]alk has been used as private property from 1929 to 2018, when the County exercised self-help."

19

Having made these findings, the trial court found in favor of the Homeowners on the sixth cause of action for inverse condemnation in the complaint and denied relief to the County on the causes of action for declaratory relief and quiet title in the cross-complaint.

D. *Permanent Injunction*

After the tentative statement of decision issued, the Homeowners filed a motion for a preliminary injunction pending entry of final judgment. The Homeowners argued that since the trial court had ruled that the County did not have a public interest in the 37-foot walk, the County should be enjoined from allowing public access. In support of the motion, the Homeowners submitted evidence of ongoing public occupation of the patios that invaded the Homeowners' privacy and caused unsafe conditions, including people using a portable fire pit on a patio and occupying the patios for long periods of time. The Homeowners sought an injunction allowing them to restore the status quo by erecting temporary fencing on either end of the 37-foot walk and directing the County to remove the public access signs and to refrain from seeking to open the 37-foot walk as public property.

The County opposed the motion for a preliminary injunction on the primary ground that the Homeowners had not shown that they had a probability of prevailing because they would not be able to obtain a coastal development permit for the fencing given the Coastal Commission's stated position regarding coastal access. The County also argued, among other things, that the injunction sought was impermissibly vague.

In the October 3, 2022 order, the trial court granted the motion and issued a preliminary injunction allowing the Homeowners to immediately erect temporary fencing as specified in the order at either end of the "Beach Drive patio areas." The October 3, 2022 order also allowed the Homeowners

to remove public access signs and directed the County to refrain from posting on its website information contrary to the statement of decision.

In a December 26, 2023 order, the trial court granted the Homeowners' motion for a permanent injunction on the same terms as the preliminary injunction. The trial court also denied the County's "[m]otion to 'exclude evidence/argument of compensation (damages) relating to use of the 37[-][f]oot [w]alk inconsistent with Coastal Commission regulations, permits and policies,' during the damages phase of an inverse condemnation trial."

E. *Final Statement of Decision and Judgment*

The trial court filed the final statement of decision on October 3, 2022. After considering the County's objections to the statement of decision and other submissions by the parties, the trial court made no alterations to the tentative statement of decision.

Thereafter, in a January 12, 2023 order, the trial court granted the Homeowners' request for a final ruling on the second cause of action for petition for writ of mandate directing the County to comply with CEQA and the third cause of action for a petition for writ of mandate asserting violations of the Coastal Act. The trial court dismissed both writ causes of action in the complaint as moot because the court had ruled that the County had no public interest in the 37-foot walk, and also because no formal action had been taken with respect to the County's contention that it was exempt from obtaining a coastal development permit prior to demolition of the structures on the 37-foot walk.

The judgment filed on February 24, 2024, states that the parties agreed that the fifth cause of action for violation of due process (42 U.S.C. § 1983) should be dismissed. The judgment also states that the parties agreed to a stipulated judgment to facilitate a final judgment and appellate review, as

21

follows:  (1) judgment in favor of the plaintiff Homeowners on the first cause of action for quiet title, the fourth cause of action for declaratory relief, and the sixth cause of action for inverse condemnation in the complaint; (2) judgment in favor of the plaintiff Homeowners and against the County on the County's cross-complaint; (3) the second and third causes of action for petitions of writ of mandate in the complaint are dismissed as moot; (4) the fifth cause of action for violation of due process in the complaint is dismissed; and (5) a permanent injunction as set forth in the December 26, 2023 order is awarded to plaintiff Homeowners.

Additionally, the judgment provides that "Plaintiffs (including Plaintiffs' successors in ownership of the Properties) are the sole owners of title in fee simple absolute of the respective portions of the 37-[f]oot [w]alk abutting each of their respective [p]roperties, and the deeds to each of the [p]roperties shall be reformed to reflect this ownership."  The judgment also orders reformation of each plaintiff Homeowner's grant deed to reflect the trial court's order regarding their fee simple ownership, and the reformed grant deeds for each property are attached to the judgment.

Further, the judgment provides that the County has no title or interest in the 37-foot walk or any portion of it, and quiets title in the plaintiff Homeowners and any subsequent owners against any adverse interest by the County.  The judgment bars the County from asserting any claim to the 37-foot walk or any portion of it.

Regarding damages, the judgment provides as follows:  "Plaintiffs are the prevailing parties and, pursuant to an agreement of the parties, within 90 days of finality of this Judgment (including finality of any appeal proceedings), County shall pay to 'Nossaman, LLP, Weseloh Trust Account' $3.7 million, which shall comprise the total amount of damages, interest,

22

attorney's fees, and costs due to [p]laintiffs under this [j]udgment through the date of entry of this [j]udgment."

## II. DISCUSSION

On appeal, the County contends that the trial court erred because (1) the Homeowners cannot establish title to the 37-foot walk because the offer to dedicate the 37-foot walk and the County's acceptance were recorded in 1929; (2) the Homeowners cannot establish title to the 37-foot walk based on the doctrine of equitable estoppel; and (3) the 1980 coastal development permit for the repairs to the seawall on the 37-foot walk requires public access and therefore the Homeowners are not entitled to compensation for inverse condemnation. The County argues that the February 24, 2024 judgment must be reversed, and the December 26, 2023 order granting a permanent injunction must be vacated.[7]

The Homeowners have filed a "protective cross-appeal" from the trial court's ruling that the third cause of action for a petition for writ of mandate asserting violations of the Coastal Act is moot because the trial court ruled in favor of the Homeowners on the quiet title issue.

We begin our analysis with the applicable standard of review.

A. *Standard of Review*

"Code of Civil Procedure section 632 provides that ' "upon the trial of a question of fact by the court," the court "shall issue a statement of decision

---

[7] The County requests judicial notice of two Coastal Commission documents, a cease and desist order dated December 14, 2023, and a second cease and desist order dated December 15, 2023, which the County acknowledges are not part of the trial court record. " '[N]ormally, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc* (1996) 14 Cal.4th 434, 444, fn. 3.) We therefore deny the request for judicial notice.

23

explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." ' [Citation]; Code Civ. Proc., § 632.) A statement of decision need not respond to 'every point raised by a party or make an express finding of fact on each contested factual matter; it need only dispose of all basic issues and fairly disclose the court's determination as to ultimate facts and material issues in the case.' " (*Alafi v. Cohen* (2024) 106 Cal.App.5th 46, 60.)

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) The appellant has the burden of identifying and establishing deficiencies in the evidence. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

B. *Offer of Dedication and Acceptance*

We first consider the threshold issue of whether the trial court erred in ruling that the County does not have a public interest in the 37-foot walk. In its ruling, the trial court relied on the following findings: No recorded acceptance of the 1928 subdivision map offer of dedication by the County was found; the 1928 subdivision map was not updated to show the acceptance; the 37-foot walk was never used as a road, street, or highway; the 37-foot walk had been "bought and sold throughout the past thirty years, or more, as part of the residences located along" the 37-foot walk; and the 37-foot walk was

24

used as private property from 1929 to 2018, when the County demolished the fence and masonry wall to allow public access.

### 1. The Parties' Contentions

The County contends that the trial court erred in finding that the County's acceptance of Peninsula Properties' offer to dedicate the 37-foot walk to the County was not effective since the evidence showed that both the renewed offer of dedication and the acceptance were recorded. Alternatively, the County asserts that a common law dedication of the 37-foot walk was effective. The County also argues that the Homeowners implicitly conceded that the 37-foot walk was dedicated to public use when they obtained the 1980 encroachment permit for the seawall, which was conditioned on a public easement over the 37-foot walk.[8]

The County also contends that the dedicated public use of the 37-foot walk cannot be lost by adverse possession or under the doctrine of equitable estoppel since the trial court made no findings that would support an estoppel, and a public right of way cannot be lost by adverse possession. Further, the County argues that the conclusive presumption that an offer of dedication was not accepted, as provided by former section 748.5, now section 771.010, does not apply because those sections are not retroactive, and because Peninsula Properties' renewed offer to dedicate the 37-foot walk was not made on a map.

---

[8] We granted the application of the California State Association of Counties, League of California Cities, and Friends of County Parks for leave to file an amicus curiae brief in support of appellants. We also granted the application of the California Coastal Commission for leave to file an amicus curiae brief in support of appellants. As the California Coastal Commission is not a party to this action, we express no opinion with respect to any California Coastal Commission actions.

The Homeowners respond that substantial evidence supports the trial court's finding that the County never validly accepted the 1928 subdivision map offer to dedicate the 37-foot walk, and therefore the County failed to comply with the requirements for a common law dedication. Alternatively, the Homeowners argue that there is substantial evidence to support the former section 748.5 conclusive presumption that the offer to dedicate the 37-foot walk was not accepted, since the County did not endorse its acceptance on the 1928 subdivision map or record the map and acceptance together, and the County had not used the 37-foot walk for street or highway purposes for more than 25 years. The Homeowners also maintain that former section 748.5 should be applied retroactively due to the language "heretofore or hereafter" in the statute.

Finally, the Homeowners contend that substantial evidence supports the trial court's finding that the County is equitably estopped from asserting a public interest in the 37-foot walk because the County has acknowledged that it has no ownership interest in the 37-foot walk; the Homeowners have paid taxes on their private patios; and the County has issued building permits to the Homeowners for improvements on their patios.

### 2. Analysis

" 'A dedication is the transfer of an interest in real property to a public entity for the public's use.' [Citation.] 'A statutory dedication is effected when, in compliance with the [version of the Subdivision M]ap [A]ct then in force, an offer of dedication is accepted by the public agency.' [Citations.] '[A] failure to complete a statutory dedication does not negate the possibility of a common law dedication.' [Citation.] On the contrary, ' "an incomplete . . . statutory dedication . . . will, when accepted by the public . . . operate as a common law dedication." ' " (*Biagini v. Beckham* (2008) 163 Cal.App.4th

26

1000, 1009 (*Biagini*); see also *Prout v. Department of Transportation* (2018) 31 Cal.App.5th 200, 212 [same].)

"Common law dedication, whether express or implied, requires both an offer of dedication and an acceptance of that offer by the public. [Citation.] An offer of dedication may be 'implied in fact' if there is proof of the owner's actual consent to the dedication. [Citations.] An offer of dedication may also be 'implied by law' [citation] if the public has openly and continuously made adverse use of the property for more than the prescriptive period." (*Scher v. Burke* (2017) 3 Cal.5th 136, 141 (*Scher*); see also *County of Inyo v. Given* (1920) 183 Cal. 415, 418 (*Inyo*) [acceptance "is actual when formal acceptance is made by the proper authorities"].) "[T]he question of whether or not there has been a dedication of land to public use is to be determined by the trier of fact from the circumstances of each particular case." (*People ex rel. Keller v. La Vista Cemetery Assn.* (1959) 175 Cal.App.2d 197, 202–203 (*Keller*).)

Relevant here, the requirements for a statutory dedication in effect in 1928 stated: "[I]f such [subdivision] map offers for dedication any highways said governing body or board of supervisors shall indorse thereon which of the highways so offered are accepted on behalf of the public, and thereupon which highways have been so accepted, and no others, shall be and become dedicated for public use." (Stats. 1921, ch. 208, § 4, p. 1519.)

The trial court found that "[t]rial evidence verified that no acceptance was ever found and that the 'renewed' offer [of dedication] was not verified. No updated map was ever prepared." Based on these findings, the trial court implicitly ruled that the requirements for a statutory dedication of the 37-foot walk were not met.

We agree. It is undisputed that, although the 1928 subdivision map was recorded on August 24, 1928, the map did not contain the Board of

Supervisors' endorsement accepting the offer to dedicate the 37-foot walk. Therefore, the statutory dedication was incomplete and consequently ineffective. (See *Biagini*, *supra*, 163 Cal.App.4th at p. 1009.)

However, that there was no effective statutory dedication does not end our analysis. We next consider whether there is substantial evidence to support a factual finding of a common law dedication, as the County argues. (See *Keller*, *supra*, 175 Cal.App.2d at pp. 202–203.) The statement of decision reflects that the trial court did not find a common law dedication because the County never improved the 37-foot walk or used it as a street or highway.

We determine that the trial court made a legal error in this ruling because public use or improvement of the property offered for dedication is not required for a common law dedication. As we have noted, a common law dedication may be implied in fact if there is proof of the owner's consent to the dedication and formal acceptance by the authorities. (*Scher*, *supra*, 3 Cal.5th at p. 141; *Inyo*, *supra*, 183 Cal. at p. 418.) The trial evidence showed that the County Board of Supervisors formally accepted Peninsula Properties' renewed offer to dedicate the 37-foot walk in the unnumbered resolution that was certified on May 7, 1929. This undisputed evidence of Peninsula Properties' actual consent to dedication and the County's formal acceptance of the proposed dedication of the 37-foot walk on May 7, 1929, is sufficient for an implied in fact common law dedication of the 37-foot walk. (See *Scher*, at p.141; *Inyo*, at p. 418.) The trial court legally erred in concluding to the contrary.

We are not persuaded by the Homeowners' argument that the dedication was contingent upon the attachment of the renewed offer of dedication to a certified copy of the May 7, 1929 resolution accepting the renewed offer of dedication and both being placed on file as a public record, as

28

stated in the resolution. Since there was no evidence of attachment and filing as a public record, the Homeowners maintain that the renewed offer of dedication of the 37-foot walk was not accepted. However, the Homeowners have provided no authority for the proposition that a common law dedication is ineffective where the acceptance was not attached to the offer of dedication. Moreover, the evidence showed that the renewed offer of dedication of the 37-foot walk and the Board of Supervisors' resolution accepting the offer were recorded because volume 160 of the County's general index of recorded documents states that an "Offer of Dedication [and] Acceptance" between the County and Peninsula Properties were recorded on May 13, 1929, only six days after the resolution by the Board of Supervisors accepting the renewed offer of dedication. "Such a dedication once completed is irrevocable." *(City of Sacramento v. Jensen* (1956) 146 Cal.App.2d 114, 122.)

We are also not persuaded by the Homeowners' argument that the conclusive presumption of nonacceptance of a proposed dedication, which is provided by former section 748.5, now section 771.010, applies. Section 771.010 provides the following requirements for a conclusive presumption that an offer to dedicate private property for public improvement was not accepted: "If a proposal is heretofore or hereafter made to dedicate real property for public improvement, there is a conclusive presumption that the proposed dedication was not accepted if all of the following conditions are satisfied: [¶] (a) The proposal was made by filing a map only. [¶] (b) No acceptance of the dedication was made and recorded within 25 years after the map was filed. [¶] (c) The real property was not used for the purpose for which the dedication was proposed within 25 years after the map was filed. [¶] (d) The real property was sold to a third person after the map was filed and used as if free of the dedication." (See, e.g., *Biagini, supra,* 163

29

Cal.App.4th at p. 1017 [section 771.010 "simply describes certain conditions under which an offer of dedication made by filing a map will be conclusively presumed not to have been accepted"].) Where the conclusive presumption applies, section 771.020 provides for a quiet title action.

Assuming, without deciding, that section 771.010 applies retroactively, it has no effect here because the statutory requirements were not met. First, the offer to dedicate the 37-foot walk was not made by map only, as required by section 771.010, subdivision (a). The trial evidence showed that the Board of Supervisors accepted by resolution Peninsula Properties' 1929 renewed offer of dedication, which was not made on a map. Second, as we have concluded, the acceptance was made and recorded in 1929, within 25 years after the 1928 subdivision map was recorded, and therefore the section 771.010, subdivision (b) requirement was not met. Accordingly, we find that the conclusive presumption of nonacceptance provided by section 771.010 does not apply to the dedication of the 37-foot walk.

We next consider the nature of the property interests in the 37-foot walk that have resulted from the common law dedication of the 37-foot walk to the County. During oral argument, counsel for the County clarified that the County contends that, as a result of the common law dedication, it has a public right-of-way easement in the 37-foot walk.

We requested supplemental briefing from the parties on the following question: Assuming arguendo that appellant County has a public right-of-way easement in the 37-foot walk, do respondents Christopher J. Weseloh et al. have fee title to the 37-foot walk? We also asked the parties to address the relevance, if any, of the following decisions: *Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301 (*Safwenberg*), *Jones v. Deeter* (1984) 152 Cal.App.3d 798, and *Besneatte v. Gourdin* (1993) 16 Cal.App.4th 1277 (*Besneatte*).

30

In its supplemental briefing, the County states that it does not object to a ruling that the Homeowners have fee title to the 37-foot walk, subject to the County's public right-of-way easement, pursuant to the marginal streets doctrine. The Homeowners agree that they have fee title in the 37-foot walk but assert that the County relinquished any easement interest in the 37-foot walk in 1953 when the Board of Supervisors voted to approve the County road commissioner's recommendation that the 37-foot walk be abandoned.

"It is well settled 'under the principles of common-law dedication the public takes nothing but an easement for a public use, the title to the underlying fee remaining in the original owner and passing to the successors in ownership of the abutting land. [Citation.] Under that principle of law all that the county [] obtained by the dedication and acceptance was an easement for road and street purposes. The underlying fee remained in the original owner and passed to his successors.' " (*Besneatte, supra,* 16 Cal.App.4th at p. 1282; see also *Wright v. Austin* (1904) 143 Cal. 236, 238–239 [by accepting land for a highway, the public acquire only the right-of-way and necessary incidents]; *Richards v. County of Colusa* (1961) 195 Cal.App.2d 803, 806 [where County of Colusa accepted a dedication for road and streets the underlying fee remained in the original owner]; Civ. Code, § 1112.)[9]

Under the marginal streets doctrine, " '[t]he grant of land adjoining a street or highway which has been wholly made from, and upon the margin of, the grantor's land is deemed to comprehend the fee in the whole of the street.' " (*Besneatte, supra*, 16 Cal.App.4th at p. 1282.) "Put another way, if a

---

[9] Civil Code section 1112 provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

property owner creates a street from and along the margin of his [or her] property, a deed conveying the land bounded by the road carries fee title to the entire parcel, subject to the public easement." (*Ibid*.)

Respondent homeowners reject the relevance of the marginal streets doctrine. Relying on the decision in *Safwenberg*, *supra*, 50 Cal.App.3d at page 308, the Homeowners argue that the County relinquished its easement interest in 1953 when the Board of Supervisors approved the County road commissioner's recommendation that the 37-foot walk be abandoned. However, the evidence showed that, although the Board of Supervisors ordered that the recommendation be referred to the district attorney, there was no further action or recording of a resolution vacating the public easement on the 37-foot walk, as required by Streets and Highways Code former section 960.2.

Accordingly, we decide as a matter of law that the common law dedication of the 37-foot walk to the County as streets or public highways resulted in the Homeowners retaining fee title to the 37-foot walk, subject to the County's public right-of-way easement. (See *Besneatte*, *supra*, 16 Cal.App.4th at p. 1282.) The County's public right-of-way easement, as we have discussed, was created by the common law dedication of the 37-foot walk for "as streets and highways for public use." " 'When land is taken, accepted, or acquired by public authority for highway purposes, the public does not acquire the fee. It acquires only an easement for the right of way for purposes of travel, with such incidents as are appurtenant or necessary for reasonable enjoyment, construction, or maintenance.' " (*Safwenberg*, *supra*, 50 Cal.App.3d at p. 307.) We conclude that the trial court erred in ruling

that the County did not have a public interest in the 37-foot walk and quieting title in the Homeowners.[10]

### C. *Equitable Estoppel*

Alternatively, the Homeowners contend that judgment should be affirmed because substantial evidence supports the application of the doctrine of equitable estoppel. We understand the Homeowners to assert that, although the trial court did not make an express ruling regarding equitable estoppel, the trial court's findings in the final statement of decision show that the trial court implicitly found the County should be equitably estopped from claiming title to the 37-foot walk.

The County responds that no findings may be implied to support the application of the doctrine of equitable estoppel, since the trial court failed to address the equitable estoppel issue in the final statement of decision after the County objected to the omission of that issue in the tentative statement of decision.

We agree with the County that we may not imply findings in support of the application of the doctrine equitable estoppel in this case. Section 634 provides: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment . . ., it shall not be inferred on . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." Thus, " 'under section 634, the party must state any objection to the

---

[10] Having reached this conclusion, we need not address the County's argument that the 1980 coastal development permit for the repairs to the seawall on the 37-foot walk requires public access and therefore the Homeowners are not entitled to compensation for inverse condemnation.

statement [of decision] in order to avoid an implied finding on appeal in favor of the prevailing party.' " (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59.) As the County brought the omission of the doctrine of equitable estoppel to the trial court and the court did not thereafter address the issue, we may not imply any findings in support of it on appeal.

The County further contends that the doctrine of estoppel cannot be applied to divest the public interest in the 37-foot walk absent compliance with the statutory requirements for abandonment of a public road. Alternatively, the County argues that it cannot be estopped from claiming a public right-of-way easement on the 37-foot walk because the Homeowners had actual or constructive knowledge of the County's claim that the 37-foot walk was a public right of way.

The Homeowners argue that substantial evidence supports the trial court's implicit finding that the County is equitably estopped from claiming title to the 37-foot walk. According to the Homeowners, the evidence supporting the application of the doctrine of equitable estoppel includes (1) the County included the Homeowner's patios on the 37-foot walk in assessing property taxes; (2) the County has issued construction permits for structures on the 37-foot walk; (3) the County has acquiesced in the Homeowners' use of the 37-foot walk for patios for decades; and (4) there is no evidence of collusion between the County and the Homeowners to avoid a violation of public policy.

" 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be

apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279 (*City of Goleta*).)  Further, "it has been held that the doctrine will not be applied to divest title to land in the absence of actual or constructive fraud on the part of the party to be estopped."  (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489 (*Mansell*).)

Moreover, "[e]quitable estoppel 'will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy."  (*City of Goleta, supra*, 40 Cal.4th at p. 279.)  "Application of the doctrine of estoppel requires, at a minimum, an actionable statement—that is, 'an affirmative representation or act by the public entity' that is intended to induce reliance by the plaintiff." (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1073.)

In the present case, the trial court did not make any express findings in the statement of decision regarding equitable estoppel.  Having reviewed the trial evidence, we decide that a finding of equitable estoppel is not supported by substantial evidence.  Although the trial evidence showed that the County has been inconsistent over the decades regarding the nature of its interest in the 37-foot walk, the Homeowners have not directed us to any evidence that would show an affirmative representation or act by the County that was intended to induce reliance on the part of the Homeowners with respect to their ownership of the 37-foot walk.  Although County Assessor Hazelton stated in his 2004 letter that "I believe that over the years (since 1928) there

35

has been an implied ownership of the walk by the homeowners along Beach Drive," his opinion is consistent with the Homeowners having fee title to the 37-foot walk.

Moreover, as the County points out, the County has asserted that it had a public interest or easement on the 37-foot walk, most notably in 1980 when the County issued an encroachment permit to the Homeowners for the construction of the seawall and repairs to the concrete patios. Additionally, the trial court did not make a finding that the County had committed actual or constructive fraud with respect to the Homeowners' title to the 37-foot walk or the County's claim of a public interest in the 37-foot walk. (See *Mansell*, *supra*, 3 Cal.3d at p. 489.)

Thus, the evidence is insufficient to establish the elements of equitable estoppel against a government body in the absence of " 'unusual instances when necessary to avoid grave injustice.' " (*City of Goleta*, *supra*, 40 Cal.4th at p. 279.) The trial court did not make any such finding, and the Homeowners have not persuaded us that we should decide as a matter of law that such a grave injustice has occurred.

D. *Protective Cross-appeal*

In their "protective cross-appeal" in case No. H051907, *Weseloh et al. v. County of Santa Cruz*, the Homeowners contend that in the event the judgment is reversed, the matter should be remanded to the trial court with instructions to issue a writ of mandate requiring the County to obtain a coastal development permit for the County's December 2018 demolition of the fence and masonry wall on the 37-foot walk. The Homeowners acknowledge that the trial court did not rule on the merits on the third cause of action in the complaint for a petition for writ of mandate alleging violations of the Coastal Act, since the trial court had deemed the third cause of action moot.

36

The County maintains that the cross-appeal should be dismissed as procedurally improper since the Homeowners are not aggrieved by the trial court's ruling that the third cause of action is moot. Additionally, the County argues that the Coastal Act claim fails on the merits as a matter of law.

We decline the Homeowners' invitation to address the merits of the third cause of action for a writ of mandate alleging violations of the Coastal Act in the first instance, and we accordingly express no opinion on the merits. We will therefore dismiss the protective cross-appeal without prejudice. (See *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["An unqualified reversal by the reviewing court presumes that the cause has been remanded for a retrial. [Citation.] The reason for the rule is that, by a reversal, the order or judgment appealed from no longer has any vitality or force. In effect, the order or judgment appealed from is vacated."].)

E. *Conclusion*

For the reasons discussed above, we decide that a common law dedication of the 37-foot walk to the County was effective, and the Homeowners have fee title to the 37-foot walk subject to the County's public right-of-way easement. Since the trial court's rulings that were encompassed in the February 24, 2024 judgment are based upon an erroneous ruling on the threshold issue of the County's interest in the 37-foot walk, we reverse the judgment in its entirety. We also vacate the December 26, 2023 order granting a permanent injunction, since that order is also based upon the trial court's erroneous ruling that the County does not have a public interest in the 37-foot walk.

We recognize the significant impact of our decision on the Homeowners, who have invested substantial resources into the 37-foot walk. We express no opinion as to any further proceedings in this matter that may occur to

alleviate that impact.  We also do not rule on the claims of any parties not before us in this appeal.

## III.  DISPOSITION

In case No. H051907, *Weseloh et al. v. County of Santa Cruz*, the February 24, 2024 judgment is reversed and the cross-appeal is dismissed. In the interests of justice, the parties shall bear their own costs on appeal.

In case No. H050433, *Weseloh et al. v. County of Santa Cruz*, the December 26, 2023 order granting a permanent injunction is vacated.  In the interests of justice, the parties shall bear their own costs on appeal.

_____
Danner, Acting P. J.

WE CONCUR:

_____
Wilson, J.

_____
Bromberg, J.

**H050433, H051907**
***Weseloh v. County of Santa Cruz***